## UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
## FOR THE DISTRICT OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| Wilnick Dorval | ) | |
| Plaintiff | ) | |
| v. | ) | Civil No. 2018-29 |
| Sapphire Village Condominium Owners | ) | ACTION FOR DAMAGES |
| Association; Sidney Jarvis; Michael Baird; | ) | JURY TRIAL DEMANDED |
| Nicholas Overmeyer; Richard O'Dell; | ) | |
| Todd Farrand; Michele Lange; | ) | |
| Mark Marolf; Matthew Swope; | ) | |
| Clarence Leveque; Joanne Levesque | ) | |
| Bernard Vansluytman; Lourdes Cordero; | ) | |
| Thomas Cordero; Madlon Jenkins-Rudziak; | ) | |
| Nora Ibrahim; Moussa Mustafa; | ) | |
| Sarah White; Ellen Hansen | ) | |
| James Koulouris; Claudia A. Woldow | ) | |
| Defendants | ) | |

FILED THIS 22 DAY OF May 20 18
GLENDA L. LAKE, ESQ.
CLERK OF COURT
BY _____
DEPUTY

**COMES NOW,** Plaintiff, Wilnick Dorval, *Pro se*, states and alleges as follows:

## I.   NATURE OF THE ACTION

1.1    Plaintiff bring this action pursuant to the Civil Right Act of 1968, as amended, 42 U.S.C.

§ 3601-3619 (hereinafter the Fair Housing Act of 1968), 42 U.S.C. §§ 1981, 1982, 42 U.S.C. §

1985, § 2000a, the Virgin Islands Civil Rights Act (10 V.IC. § 64); and other laws and policies

of the United States and the Territory of the Virgin Islands. Defendants Sapphire Village

Condominium Owners Association (hereinafter "Association"), and individual homeowners and

tenants have been and are engaging in race discrimination harassment and private nuisance in order to force me out of my home because of my race black and from Haiti. I am the only Haitian naturalized U.S. citizen leaving in the St. Vincent building at Sapphire Village Development.

1.2     Defendants have discriminated and continued to discriminate against me in many ways including but not limited to engaging in excessive noise disturbances, failing to and selectively enforcing their bylaws, and Rules and Regulations, and allowing the owners, tenants and others to create a hostile environment for me to intimidate and drive me out of my home because I am black and from Haiti.

1.3     Defendants have no legitimate non-discriminatory reason to justify their treatment of Plaintiff, rather, Defendants based their action on Plaintiff's race and national origin. Because of Defendants' discriminatory acts, Plaintiff is deprived of the use of his apartment and bedroom; of the privileges and benefits of Sapphire Village Development and was denied the right to make and enforce a contract, was subjected to unlawful discrimination and was denied equal treatment in a place of public accommodation.

1.4     This civil rights lawsuit is brought to ensure that the promise of equal treatment embodied in federal, state and territorial anti-discrimination laws does not become a meaningless guarantee for person that are black and/or Haitian national origin.

2

## II.    PARTIES

2.1     Plaintiff, Wilnick Dorval, is an adult resident of St. Thomas, at Sapphire Village
Development, since October 1, 2015. I live alone, and I do not have any friends or family in the
U.S. Virgin Islands, and I am a naturalized citizen of the United States of Haitian origin.

2.2     Defendant Sapphire Village Condominium Owners Association is located at 6700
Sapphire Village St. Thomas, Virgin Islands 00802-1340, is a non-profit corporation organized
under the laws of U.S. Virgin Islands Condominium Act, that resides and operates its principal
place of business in St. Thomas, U.S. Virgin Islands. The Association is comprised of the
individual owners of approximately 225 residential properties located in 7 buildings in the
Sapphire Village Development.

2.3     Defendant Sidney Jarvis owns a home at 6700 Sapphire Village, Apt 261, St. Vincent
building, St. Thomas 00802. Mr. Jarvis is a member of the Association and President of the
Board of Directors of the Association. Mr. Jarvis resides at 1591 Holly Boulevard, Manasquan,
New Jersey 08736. Mr. Jarvis is a resident of Manasquan, New Jersey.

2.4     Defendant Michael Baird, owns apartment 252 at 6700 Sapphire Village, Barbados
building, St. Thomas, V.I. 00802. Mr. Baird is a member of the Association and served as
Treasurer, of the Board of Directors. Michael Baird resides at 171 Parkview Drive, Pickerington,
Ohio 43147. Mr. Baird is a resident of Pickerington, Ohio.

2.5     Nicholas Overmeyer, owns a home at 6700 Sapphire Village, St. Thomas 00802. Mr.
Overmeyer is a member of the Association and served on the Board of Directors. Mr. Overmeyer
last known address was 249 E 550 N, Camden, IN 46917.

3

2.6    Defendant Richard O'Dell, owns apartment 300A at 6700 Sapphire Village, Tobago building, St. Thomas V.I. 00802. Mr. O'Dell is a member of the Association and served on the Board of Directors. Mr. O'Dell resides at 209 St. Maarten bldg. St. Thomas, V.I. 00802. Mr. O'Dell is a resident of this District.

2.7    Defendant Todd Farrand own a home at 6700 Sapphire Village. Mr. Farrand is a member of the Association and served as Secretary of the Board of Directors. Mr. Farrand last known address is 142 Hunters LN Devon, PA 19333.

2.8    Michele Lange own a home at 6700 Sapphire Village. Ms. Lange is a member of the Association and served as Vice-President of the Board of Directors. Mr. Lange last known address is 201 Hemlock LN Manchester Township, NJ 08759.

2.9    Defendant Mark Marolf is the property manager at 6700 Sapphire Village and at all times relevant to this Complaint, he acted within the scope of his employment with the Association. Mr. Marolf is Caucasian and resided at 6700 Sapphire Village, Apt 309, St. Thomas, V.I. 00802. Mr. Marold is Caucasian and a resident of this District.

2.10    Defendant Joanne Levesque own apartment 273 at 6700 Sapphire Village. Ms. Levesque is a member of the Association. Ms. Levesque resides at 24 Shore Drive, Bristol, New Hampshire 03222. Ms. Levesque is a resident of Bristol, New Hampshire.

2.11    Defendant Clarence Levesque own apartment 273 at 6700 Sapphire Village during the relevant time of this complaint. Mr. Levesque resides at 24 Shore Drive, Bristol, New Hampshire 03222. Mr. Levesque is a resident of Bristol, New Hampshire.

2.12    Bernard Vansluytman, esq., is the owner of apartment 266 at 6700 Sapphire Village, St. Thomas V.I. 00802. Mr. Vansluytman is a member of the Association. Mr. Vansluytman is a resident of this District.

2.13    Defendant Lourdes Cordero owns apartment 257 at 6700 Sapphire Village, St. Vincent building, St. Thomas, V.I. 00802. Ms. Cordero is a member of the Association. Ms. Cordero resides at 2305 Laurel St. #616, San Juan, Puerto Rico 00913. Ms. Cordero is a resident of San Juan, PR.

2.14    Defendant Thomas Cordero is married to Defendant Lourdes Cordero and both own apartment 257 at 6700 Sapphire Village, St. Vincent building, St. Thomas, V.I. 00802. Mr. Cordero is a member of the Association. Mr. Cordero resides at 2305 Laurel St. #616, San Juan, Puerto Rico 00913. Mr. Cordero is a resident of San Juan, PR.

2.15    Defendant Madlon Jenkins-Rudziak owns apartment 274 at 6700 Sapphire Village, in the St. Vincent building, St. Thomas, V.I. 00802. Ms. Jenkins-Rudziak is a member of the Association. Ms. Jenkins-Rudziak resides at 157 Farrington Dr. Newman, GA 30263-7425.

2.16    Defendant Matthew Swope resided at apartment 273 at 6700 Sapphire Village, St. Vincent building, St. Thomas, V.I. 00802, from October through April 2016. Mr. Swope last known address is 510 SW 301 St. Road, Warrensburg, MO 64093.

2.17    Defendant Nora Ibrahim resided at apartment 273 at 6700 Sapphire Village, St. Vincent building, St. Thomas, V.I. 00802. Ms. Ibrahim last known address is 2122 St. Peter Mountain Road, St. Thomas, V.I. 00802.

2.18    Defendant Moussa Mustafa resided at apartment 273 with Nora Ibrahim at Sapphire

Village, St. Vincent building, St. Thomas V.I. 00802. Mr. Mustafa went to the Middle East and

his whereabouts are unknown.

2.19    Defendant Sarah Whyte provided maid services, similar to a hotel, such as cleaning,

laundry and towers, for Lourdes Cordero and Thomas Cordero during the relevant time. At all

times relevant to this Complaint, she acted within the scope of her employment with the

Association, owners and tenants. Ms. Whyte resides at 2005 D3 Estate, Altona, St. Thomas, V.I.

00802 and she is a resident of this District.

2.20    Defendant Ellen Hansen rented apartment 257 starting July 3, 2016. Ms. Hansen last

known address is 0511 Deer Hill Road, St. Thomas, V.I. 00802.

2.21    Defendant James Koulouris resided in apartment 274 at 6700 Sapphire Village, St.

Thomas, V.I. 00802, until November 2017. Mr. Koulouris last known address is 6700 Sapphire

Village, Apt 258, St. Thomas, V.I. 00802.

2.22    Claudia Woldow resides in apartment 266 at 6700 Sapphire Village, St. Thomas, V.I.

00802, since January 2018. Ms. Woldow is a resident of this District.

### III      JURISDICTION AND VENUE

3.1     The United States District Court of the Virgin Islands for the Division of St. Thomas and

St. Johns has jurisdictions over this action pursuant to 28 U.SC §1331, §1332, §1343 and 42

US.C. 3613. The claims arose under the laws of the United States, specifically Fair Housing Act

of 1968, 42 U.S.C. §§ 3601-3619, and 42 U.S.C. §§ 1981, 1982, 42 U.S.C. § 2000(a), and 42

U.S.C. §1985.

3.2     Defendants acts, and omissions alleged in this Complaint arose at Sapphire Village Development and other places located in St. Thomas.

3.3     Venue is proper within this District pursuant to 28 U.S.C. § 1391.

## IV.     FACTUAL ALLEGATIONS

## 4.1     THE ASSOCIATION, OWNERS AND TENANTS CONPIRED WITH EACH OTHER TO MAKE EXCESSIVE NOISE DISTURBANCES TO OBSTRUCT JUSTICEAND DRIVE ME OUT OF MY HOME AND THE UNITED STATES

4.1.1     Sapphire Village Condominium is an upscale Condominium community located on Smith Bay, St. Thomas, Virgin Islands.

4.1.2     Sapphire Village is a privately own gated community. The special features and amenities includes: (1) Two pools (2) SLICE PIZARIA, (3) 5 Acres of green space (4) Sapphire Beach and Marina (4) A soda vending machine. Further, Sapphire Village Development is a place of public accommodation.

4.1.3     Sapphire Village Condominium Owners Association, is governed by a six-member Board of Directors. The Board of Directors are responsible for, but not limited to: (1) Assessing common expenses (2) Personnel (3) Ensuring adherence to the Association By-laws and Rules and Regulations for the Development.

4.1.4     Sapphire Village Condominium Development has two entrances (1) one leads to the Sapphire Village Condominium and (2) the other leads to Sapphire Beach Resort & Marina. Both entrances have a gate and a security guard booth. Everyone must stop at the security gate for permission prior to admittance.

7

4.1.5   Sapphire Village Condominium Development has a large staff of Security Guards that patrol the Development, including the buildings, 24 hours on foot or in a golf cart.

4.1.6   Sapphire Village Condominium Owners Association is in possession and control of the entire property surround the 7 buildings in the Development.

4.1.7   I moved into rental unit 265, Thursday 1st. of October 2015, located at on the second floor of the St. Vincent building within the Sapphire Village Condominium Development. I live alone, and I am unemployed. The Association is fully aware of these facts because I have had no visitors other than an attorney and I complained in person several times to Sapphire management's office and Security booth during the day about the excessive noises emanating from apt 273, 266, and 257.  The Association, owners, and tenants and are aware that I am home during the day because they saw me running for exercise and engage in various activities such as walking and grocery shopping. Specifically, one unidentified neighbor stated to me "this is the guy that is always running around here." I ignored him.

4.1.8   Three units surround my apartment in the St. Vincent building: (1) unit 273 a one-bedroom apartment on the third floor located directly above my apartment (2) unit 257 a one-bedroom apartment on the first floor located directly below my apartment (Both units 273 and 257 have the same floor plan as my unit 265) and (3) unit 266 is a studio apartment located on the 2nd floor next to my unit on the left. Unit 274 is a studio apartment located on the 3rd floor next to unit 273 and above unit 266 on the left of my unit. There are no apartments on the right side of my unit.

4.1.9   Jacqueline Lindberg's apartment 267 is located on the second floor next to apartment 266, two doors from my apartment.

8

4.1.10  All of the apartments in the St. Vincent building have a balcony that faces the Marina and beach and have the same features of a sliding glass door and a screen door that lead to a balcony.

4.1.11  All of the apartments' front and screen doors in the St. Vincent building open to a long walkway that extends through the entire length of the building. There is a parking lot right in front of the building without assigned parking.

4.1.12  Sapphire Village Condominiums Rules and Regulations in bold print state "The following Rules and Regulations apply to all occupants of units at Sapphire Village." And section 15 states in bold print "Quiet time is from 11.00 PM till 8.00 AM."

4.1.13  Sapphire Village Condominiums Rules and Regulations section 12 states "Children are not allowed to play on walkways."

4.1.14  Sapphire's Code of Conduct in pertinent parts states that no occupier of a unit shall cause a nuisance to the occupant of another unit as to effect that unit peaceful enjoyment.

4.1.15  Monday, the 5th of October 2015, I started to hear excessive noise disturbances emanating from apartment 273 and 257 during the day and at night.

4.1.16  Defendant Mark Marolf, Property Manager, called the police to my apartment on October 9, 2015, at about 7 PM, Sapphire Security Guard (Unidentified) banged on my door and I did not know at the time who was knocking, so I did not open my door. But, Sapphire Security Guard used his key to my apartment and opened the door. I became frightened and thought it was a home invasion. Subsequently, the Police Officer, announced himself.

4.1.17  October 9, 2015, Sapphire Security Guard explained to me, they had received several complaints regarding disturbing noises emanating from my apartment. I gave permission for

9

Sapphire Security Guard and Police Officer to search my apartment for any damage to the apartment or anything that could be used to make noise disturbances. After the search, Sapphire Security Guard and Police Officer concluded that there is nothing here to make any noise disturbances. Further, Sapphire Security Guard stated that he had heard a thumping sound of someone knocking on the wall of one of the units. I explained calmly to the Security Guard, the noises he described are coming from apartment 273.

4.1.18 Defendant Matthew Swope at apartment 273, continued to make noise disturbances throughout the week of October 11, 2015.

4.1.19 October 11, 2015, Sapphire Security Guard and Mark Marolf, Property Manager, knocked on my door. I exited my apartment and spoke to both of them standing on the walkway in front of my apartment. The Security Guard explained that several neighbors were complaining about noise disturbances emanating from my apartment. During the conversation, Sapphire Security Guard and I heard a loud banging noise disturbance. I pointed it out immediately to Sapphire Security Guard and explained that I could not make that loud banging noise, since I am standing outside with him. Still, Mark Marolf and Sapphire Security Guard requested to inspect my apartment for a second time and I refused. After, I walked around the Sapphire Village Development, but Sapphire Security Guard and Mark Marolf followed me around the entire Development and Mr. Marolf stated, "I am going to follow you around until you speak to me. I am going wherever you go".

4.1.20 October 11, 2015, Mark Marolf had called the police again and when, I arrived at the entrance of the Development, on top of the hill, two Police Officers were waiting, and Mr. Marolf and the Sapphire Security Guard now surrounded me. The Police Officers requested

access to my apartment. I refused and requested that the Police Officers provide a warrant to search my apartment or arrest me. However, Mark Marolf, Police Officers and Sapphire Security Guard, followed me to my apartment and were waiting in the parking lot in front of the St. Vincent building. Mr. Marolf stated, "I am going to search the apartment." I did not reply. To defuse the situation, I walked around the Development until they were gone.

4.1.21 November 1, 2015, Emad O'Baidi, landlord, forwarded to me an e-mail from Lourdes Cordero and Thomas Cordero owner of apartment 257 requesting that I be evicted from my apartment for excessive noises and explaining that if they had a tenant making excessive noises they would have immediately evicted that tenant. Their words certainly came back to them for reasons below.

4.1.22 During the rest of the month of October 2015, I continued to hear noise disturbances emanating from 273 and 257, including slamming of the front and screen doors.

4.1.23 November 8, 2015, I received an e-mail from the landlord instructing me to send my noise complaints to the H.O.A. CCRR at mgr@sapphirevillage.com, as the noise disturbances are occurring, so Sapphire Village Condominium Owners Association can take action and make the neighbors in apartment 273 and 257 cease making excessive noises disturbances during the day and at night in violations of Sapphire Village Condominiums Rules and Regulations.

4.1.42 After October 5, 2015, I have never been allowed to sleep for more than 5 hours in my apartment.

## 4.2 THE ASSOCIATION, OWNERS, AND TENANTS COMPIRED TO INTENTIONALLY AND RECKLESSLY REMOVE PART OF THE SCREEN DOOR-CLOSER

4.2.1   Since October 5, 2015, I noticed that the screen door in all the apartments in the St. Vincent building slammed when it closed making blurring noise disturbances that reverberated throughout my apartment. The Association, owners and tenants willfully and maliciously conspired, planned and agreed to temper with the screen door-closer of all the screen doors in the St. Vincent building to cause massive noise disturbances during the day and at night for more than 3 hours at a time to drive me out of my home and force me out of the United States because I am black and from Haiti.

4.2.2   Since October 5, 2015, I observed that all the apartments' screen doors are malfunctioning or broken in the St. Vincent building. Each time, a person entered and exited one of the apartments the screen door slammed when it closed.

4.2.3   My apartment's screen door function properly. When I entered or exited my apartment the screen door does not slammed because the screen door-closer prevented the screen door from slamming.  That is not the same for any of the other apartments in the St. Vincent building.

4.2.4   <u>Parts of a screen door</u>: There are two parts to a screen door: (1) the actual screen door (wood or metal) and (2) an adjustable screen door-closer. The adjustable screen door-closer is made up of a cylinder and inside that cylinder there is (a) spring and (b) an air cylinder. Both instruments prevent the screen door from slamming each time it closes.

4.2.5   <u>How a screen door work</u>: when the screen door opens the air cylinder fill with air and when the screen door is closing the spring pushes a piston, which forces the air out of the cylinder through a small hole. The hole is adjustable to control the closing rate of the screen door.

4.2.6    The screen door slams when it closes without the spring or the air cylinder.

4.2.7    The screen door in the apartments at the St. Vincent building are made of metals and all the screen doors slammed, except, for the screen door of my apartment.

4.2.8    The Association, owners and tenants conspired, planned and agreed to negligently, recklessly or intentionally removed parts of the screen door-closer or caused the screen door-closer to malfunction. All the neighbors are in sole possession and control of the screen door and screen door-closer. Further, all the neighbors know that the screen door slammed when it closed because of the blurring noise.

4.2.9    The Association and management are aware that the screen doors slammed because I have observed Mark Marolf, the Property Manager, and other Sapphire's maintenance staff entered and exited the St. Vincent building followed by loud banging of the front and screen doors. Specifically, on December 7, 2015, I observed Mark Marolf entered and exited apartment 266 in the St. Vincent building followed by loud banging of the front and screen doors.

4.2.10  All the Defendants conspired, planed and agreed to deliberately and purposely slam the screen doors to cause severe and intense noise disturbances that reverberated throughout my apartment to intimidate and force me out of my home because I am black and from Haiti.

### 4.3 Excessive Noises Emanating from Defendant Cordero s' Apartment 257

4.3.1    Defendants Lourdes Cordero and Thomas Cordero own apartment 257 and operate it as a short-term or long-term vacation rental.

Short-term tenants

4.3.2   Defendants Lourdes Cordero and Thomas Cordero rented apartment 257 to several short-term tenants during the relevant period of October 5, 2015 to present. The tenants number between two to four persons at a time.

4.3.3   Defendants Lourdes Cordero and Thomas Cordero's short-term tenants have been making and continued to deliberately and purposely make excessive noise disturbances that are interfering with the enjoyment of my apartment from October 5, 2015 to present, to force me out of my home because I am black and from Haiti.

4.3.4   Each person that entered or exited apartment 257 makes a minimum of two slamming noise disturbances, consisting of one for the front door and one for the screen door, with a minimum of two persons per stay that is a minimum of four slamming sounds each time they entered or exited the apartment, one at a time for whatever reason. The tenants entered and exited the apartment about 5 to 6 times during the day causing a minimum 40 to 48 slamming sounds in 2 to 3 hours. The same activities take place in the evening and at night resulting in an average of 120 to 144 slamming sounds. The slamming sounds made it impossible for me to rest, read or write in my apartment with the door and windows closed.

4.3.5   Defendants Lourdes Cordero and Thomas Cordero's short-term tenants deliberately and purposely slammed the front and screen doors that opened to the walkway of the St. Vincent building repeatedly during the day and at night for more than 2 to 3 hours at a time to intimidate and force me out of my home because I am black and from Haiti. Specifically, March 21, 2016, I observed and documented the short-term tenants in apartment 257 slamming the front and screen doors repeatedly.

4.3.6   Defendants Lourdes Cordero and Thomas Cordero's short-term tenants deliberately and purposely slammed the sliding glass and screen doors that open to the balcony repeatedly during

the day and at night for more than 2 to 3 hours at a time to intimidate and force me out of my home because of my race and national origin. Specifically, March 23, 2016, I observed and documented the short-term tenants in apartment 257 coming in and out of the balcony and deliberately slamming the sliding glass and screen doors repeatedly.

4.3.7   Defendants Lourdes Cordero and Thomas Cordero's short-term tenants deliberately made loud banging during the day and at night for more than 2 to 3 hours at a time to intimidate and force me out of my home because I am black and from Haiti.

4.3.8   Defendants Lourdes Cordero and Thomas Cordero's short-term tenants deliberately made banging sounds at night after 11 PM and in the morning prior to 7 AM that last for more than 2 to 3 hours at a time, in violation of the Association's Rules and Regulations to intimidate and force me out of my home because I am black and from Haiti.

4.3.9   I filed more than 10 police reports about the excessive noises emanating from apartment 257 and informed Sapphire management of the police reports. For example, April 18, 2016, the short-term tenants deliberately and purposely made loud banging noises for almost the entire day. I provided two audio recordings of the excessive noises to Sapphire management and the noise disturbances can be heard loud and clear on the recordings. However, Sapphire management did nothing about my complaints, so I filed a police report about the noise disturbances.

4.3.10  June 26, 2016, I was awakened by loud banging sounds emanating from Lourdes Cordero's apartment 257 around 6:30 AM and the banging noises continued until about 8:30 AM when the short-term tenants left the apartment one at a time and deliberately slammed the front and screen doors repeatedly. I called Sapphire security around 8:30 AM to complain about the excessive noises that deprived me of sufficient sleep.

4.3.11  June 27, 2016, the short-term tenants deliberately and purposely slammed the front and screen doors of apartment 257 at 1 AM and woke me out of my sleep. Later, the short-term tenants deliberately made loud banging noise disturbances that woke me at 6 AM and prevented me from returning to sleep. At 7 AM, I sent a letter to Sapphire management explaining that the short-term tenants in apartment 257 are making excessive noise disturbances. However, Sapphire management refused to accept my noise disturbance complaints by e-mail or over the phone. As such, the short-term tenants in apartment 257 continued to deliberately and purposely slam the front and screen doors of apartment 257 repeatedly well past 10:30 AM to intimidate and force me out of my home because I am black and from Haiti. That day, a few of the short-term tenants went up to the second floor and tried to deliberately open my apartment door. I ignored them.

4.3.12  June 28, 2016, the short-term tenants intentionally woke me out of my sleep in the morning around 6 AM with loud banging sounds and prevented me from returning to sleep because the noise disturbances continued well past 8:30 AM. Around 12:30 PM, the short-term tenants in apartment 257 exited and entered the apartment one at a time and deliberately and purposely slammed the front and screen doors of their apartment repeatedly and continuously for 30 minutes to intimidate and force me out of my home because I am black and from Haiti. As a consequence, I suffered with headache.

Defendant Ellen Hansen Short-Term Tenant

4.3.13  Defendant Ellen Hansen arrived at apartment 257 in the St. Vincent building on July 3, 2016, around 12 PM.

4.3.14  Defendant was in sole possession and control of apartment 257. A total of four person resided in apartment 257 consisting of two adults and two children.

16

4.3.15  Defendant as soon as arriving made loud banging sounds and deliberately and purposely slammed the front and screen doors of apartment 257 repeatedly causing blurring noise disturbances that interfered with the peaceful enjoyment of my apartment to intimidate and force me out of my home because I am black and from Haiti.

4.3.16  July 3, 2016, the occupants of apartment 257 deliberately and purposely slammed the front and screen doors repeatedly around 12:00 PM for one hour to intimidate and force me out of my home because I am black and from Haiti. I called Sapphire Security and complained about the excessive noises that defendant was intentionally causing.

4.3.17  July 3, 2016, I sent a letter to Sapphire management informing them of the excessive noise disturbances emanating from apartment 257 and requested that management informed the tenants and owners of my noise complaints. I also requested for management to enforce its Rules and Regulations and By-laws.

4.3.18  July 3, 2016, occupants of apartment 257 simply went wild and deliberately and purposely slammed the screen and sliding glass doors of apartment 257 repeatedly for about one hour making blurring noise disturbances that prevented me from obtaining sufficient rest in my home.

4.3.19  Further, July 3, 2016, Defendant Ellen Hansen returned to apartment 257 around 8 PM and the occupants of apartment 257 deliberately and purposely slammed the front and screen doors repeatedly of their apartment for about one hour by entering and exiting, one at a time to intimidated and force me out of my home because I am black and from Haiti. The noise disturbances reverberated and echoed throughout my apartment. I could not read or watch television and I suffered with severe migraine because of the loud banging.

4.3.20  July 5, 2016, I came home around 12:30 PM and defendant Ellen Hansen returned to apartment 257 and the occupants deliberately and purposely slammed the front and screen doors repeatedly of their apartment, entering and exiting one at a time, for more than 30 minutes making blurring noise disturbances that caused me to suffer with severe headache and prevent me from writing, and resting.

4.3.21  July 6, 2016, around 8 PM occupants of apartment 257 deliberately and purposely slammed the front and screen doors of their apartment repeatedly making blurring noise disturbances that interfered with my apartment to intimidate and force me out of my home because I am black and from Haiti.

   Defendant Sarah Whyte, Cleaning Services

4.3.22  Defendants Lourdes Cordero and Thomas Cordero's retained Sarah Whyte cleaning service company to clean apartment 257 about 2 or 3 days per week.

4.3.23  Defendants Lourdes Cordero and Thomas Cordero's cleaning services, Sarah Whyte slammed the front and screen doors of apartment 257 repeatedly during the day for more than 2 to 3 hours at a time to intimidate and force me out of my home because I am black and from Haiti.

4.3.24  Defendant Sarah Whyte, cleaning services, deliberately and purposely made banging loud noises during the day for more than 2 to 3 hours at a time to intimidate and force me out of my home because I am black and from Haiti. I recognized defendant's vehicle because each time the defendant's vehicle is parked in the parking lot of the St. Vincent building there are an enormous amount of noise disturbances emanating from apartment 257.  In addition, I went to Sapphire Security booth to complain about the excessive noise that Ms. Whyte is making and how the

noises prevented me from obtaining sufficient rest. However, Sapphire Security Guard stated that

the noises are natural part of cleaning the apartment. I protested that the noises are excessive

because the banging sounds last for more than 2 to 3 hours. For, example, June 23, 2016, I called

Sapphire Security at about 2:30 PM to complain about the excessive noise disturbances

emanating from Lourdes and Thomas Cordero's apartment. That day, defendant Sarah Whyte

was in the apartment deliberately and purposely making loud banging sounds that interfered with

my apartment during the day from 1 PM to 3:30 PM.   In addition, I sent Sapphire management

numerous e-mails about the excessive noise emanating from 257 during the days of the cleaning

services. Sapphire management did nothing about the excessive noises.

4.3.25  June 28, 2016, around 1 PM, I noticed Lourdes Cordero's cleaning services vehicle in the

parking lot of the St. Vincent building and defendant Sarah Whyte intentionally made banging

noise disturbances and deliberately slammed the front and screen doors of apartment 257

repeatedly, well past 5 PM, to intimidate and force me out of my home because I am black and

from Haiti. I called Sapphire Security, but Sapphire management did nothing about the excessive

noises emanating from apartment 257 for the entire day.

4.3.26  The discriminatory practices described above were carried out:

> (a) at the direction of and with the consent, encouragement, knowledge, and ratification
> of Defendants;
>
> (b) under Defendants' authority, control, and supervision; and/or
>
> (c) within the scope of Defendants' employees' employment.

4.3.27 Defendants are liable for the unlawful acts of its employees, agents and/or representatives

directly and/or under the doctrine of *respondeat superior*.

4.3.28  Lourdes Cordero and Thomas Cordero knew or should have known that the short-term tenants and cleaning services are making excessive noise disturbances that are interfering with the enjoyment of my apartment. Based on the letters from Sapphire Village Condominium Owners Association, Board of Directors to Mr. O'Baidi and Mark Marolf, Property Manager, made the tenants aware of my excessive noise complaints. In addition, my landlord was notified when the neighbors complained about purported excessive noise emanating from my apartment.

4.3.29  I started complaining about excessive noise disturbances emanating from apartment 257 since October 5, 2015. Lourdes Cordero and Thomas Cordero are aware of my complaints about the noise disturbances that are emanating from apartment 257 and took no action to minimize or abate the excessive noises.

4.3.30  I sent more than 400 complaints and provided more than 400 audio and video recordings to Sapphire management about the excessive noises that are emanating from apartment 257. In the e-mails that I sent to Sapphire management, I explained that the short-term tenants in apartment 257 are slamming the front, screen and glass doors of apartment 257 repeatedly and that there are loud banging noises emanating from that apartment.

4.3.31  Defendants Lourdes Cordero and Thomas Cordero had numerous opportunity to correct the excessive noises that their short-term tenants and cleaning services are causing each time the short-term lease terminated. And there have been several short-term tenants from October 2015 to present.

4.3.32  Each time the short-term lease ended defendants Lourdes Cordero and Thomas Cordero should have either informed the new short-term tenants and Sarah Whyte about the malfunctioning or broken screen door-closer in order for the tenants to take care and not to allow the screen door to slam behind them when they entered or exited apartment 257. Alternatively,

Defendants should have repaired the screen door-closer that is causing noise nuisance before leasing the apartment again.

4.3.33 The excessive and unnecessary noise disturbances that are emanating from apartment 257 during the day and at night prevented me from obtaining any rest, and deprived me of the use of my television, kitchen and leaving room. The slamming of the front, screen and sliding glass doors of apartment 257 by the tenants and cleaning services reverberated throughout my apartment.

4.3.34 In the e-mails I sent to Sapphire management, I explained that the noise disturbance emanating from apartment 257 are causing me to suffer with chest pains, difficulty breathing, nausea and vomiting when the tenants slammed the doors of their apartments and wake me suddenly from sleep. In addition, the excessive noises are causing me to suffer with severe headache and exhaustion due to lack of sufficient sleep and rest.

4.3.35 Defendants Lourdes and Thomas Cordero took no actions to minimize or abate the excessive noise disturbances that continued to emanate from their apartment.

**4.4     Excessive Noises Emanating From Defendant Joanne Levesque's Apartment 273**

4.4.1     Apartment 273 is located on the third floor above my apartment 265 in the St. Vincent building.

Defendant Matthew Swope

4.4.2     Joanne M. Lévesque and Clarence Levesque owns apartment 273 and leased it to defendant Matthew Swope from October 2015 through April 2016.

4.4.3     Defendant Matthew Swope is Caucasian and was in sole possession and control of apartment 273.

4.4.4    Defendant Matthew Swope intentionally and recklessly made loud banging noises that interfered with the enjoyment of my apartment to intimidate and force me out of my home because I am black and from Haiti, starting on October 5, 2015 until he ceased possession at or about April 2016.

4.4.5    January 27, 2016, I observed and heard loud stomping sounds emanating from apartment 273 that caused the ceiling of the vanity in my bathroom to brake. I informed Sapphire management of the incident and requested for Sapphire management to abate the excessive noises that were emanating from that apartment.

4.4.6    March 28, 2016, I provided 11 audios and 1 video recordings of the excessive noises emanating from apartment 273 as the noise disturbances were occurring. In the e-mails, I explained to Sapphire management that the excessive noises have been going on for 2 to 3 hours at a time and that the noise disturbances are preventing me from obtaining sufficient sleep and rest. The banging and loud sounds emanating from apartment 273 can be heard by anyone standing on the walkway and parking lot of the St. Vincent building. Further, the noise disturbances prevented me from watching television, reading and writing. Sapphire management did nothing about the excessive noise disturbances.

4.4.7    March 28, 2016, I filed a police report about the excessive noises emanating from apartment 273 and 257. I explained to the Police Officer that there are loud and banging sounds emanating from apartment 273 and 257 multiple times during the day and last about 2 to 3 hours at a time. I informed Sapphire management about the police reports and requested that they enforced Sapphire Village Condominium Rules and Regulations because the excessive noises are occurring well past 11 PM and prior to 8 AM in violations of its Rules and Regulations.

4.4.8    March 29, 2016, I provided to Sapphire management three audios of loud banging emanating from apartment 273 as the noises were occurring. In the e-mails, I explained that the noise disturbances have been going on for hours and that the excessive noises are preventing me from obtaining sufficient sleep and rest.

4.4.9    In addition, defendant Matthew Swope's cleaning services deliberately and purposely slammed the front and screen doors of apartment 257 repeatedly during the day for more than 2 to 3 hours at a time that prevented me from sleeping, resting, reading, writing and watching television during the day.

4.4.10   Defendant Matthew Swope's cleaning service intentionally made loud banging noises during the day for more than 2 to 3 hours at a time that interfered with the peaceful enjoyment of my apartment to intimidate and force me out of my home because I am black and from Haiti.

4.4.11   I sent more than 500 complaints about excessive noise disturbances emanating from apartment 273 and I provided more than 400 audio and video recordings of the excessive noises emanating from apartment 273. In the e-mails to Sapphire management, I complained that the noise disturbances are occurring multiple times during the day and lasting 2 to 3 hours at a time. Further, I explained that the noise disturbances are preventing me from obtaining sufficient sleep and rest. In addition, I explained that when the loud banging woke me suddenly out of my sleep, I suffered chest pains, difficulty breathing, nausea and vomiting.  Additionally, I complained that I am suffering with severe headache and exhaustion as a consequence of the excessive noises emanating from apartment 273. I pleaded with Sapphire management to enforce Sapphire Village Condominium Rules and Regulations, so I can obtain some sleep and rest because the loud banging noise disturbances emanating from apartment 273 intentionally woke me out of my sleep at night and in the morning and prevented me from going back to sleep. Each time, I fall

asleep a banging sound woke me up about every 10 to 20 minutes for more than 2 to 3 hours. Sapphire management did nothing about the excessive noise disturbances.

4.4.12  Defendant Matthew Swope knew or should have known about the noise disturbances that are emanating from apartment 273 because December 19, 2015, Mark Marolf, Property Manager, informed Defendant of my noise complaints. Mr. Marolf explained in an e-mail to me that he spoke to the tenant in apartment 273 and inquired about my noise complaint. The tenant stated that he was not home. Further, the tenant explained that he was at a restaurant and has a time stamped store receipt as evidence.  I explained to Mr. Marolf, nevertheless, there are loud banging sounds emanating from that apartment that are interfering with the use and enjoyment of my apartment.

4.4.13  Defendant Matthew Swope failed to take any action to minimize or abate the excessive noise disturbances emanating from his apartment since October 2015 through April 2015.

4.4.14  I have not use the bedroom of my apartment to sleep, since October 5, 2015, when the excessive noises emanating from apartment 273 and 257 started.

4.4.15  The excessive noises emanating from apartment 273 have deprived me of sufficient sleep and rest and caused me to suffer with chest pains, difficulty breathing, nausea, vomiting, severe headache and exhaustion. In addition, the noise disturbances interfered with normal uses of my apartment such that Defendant Matthew Swope had essentially evicted me from my bedroom and I could not read, write or watch television in my apartment.

Defendants Moussa Mustafa and Nora Ibrahim

4.4.16  Defendants Joanne M. Lévesque and Clarence Levesque owns apartment 273 and leased it to Defendants Moussa Mustafa and Nora Ibrahim around May 2016.

4.4.17 Defendants Moussa Mustafa and Nora Ibrahim resided at apartment 273 in the St.

Vincent building during the Month of May 2016 through June 2016. A total of four individuals

lived in apartment 273 consisting of three men and one woman.

4.4.18 Defendants Moussa Mustafa and Nora Ibrahim were in sole possession and control of

apartment 273.

4.4.19 I did not believe that the intensity of the noise disturbances could get louder and more

frequent, but the new tenants Moussa Mustafa and Nora Ibrahim increased the volume and

frequency of the noise disturbances. My apartment simply became impossible to inhabit because

the noise disturbances never ceased, I fall asleep despite of the noise disturbances because my

eyes closed involuntarily from exhaustion. After a few minutes, I am awakened out of my sleep

by loud banging or stomping for more than 2 to 4 hours at night or in the morning. I could not

help falling back to sleep because I was so exhausted, but the noise disturbances continued to

interrupt my sleep soon as my eyes closed. I tried to keep my eyes opened because the process of

repeatedly been awaken soon as my eyes close caused me physical pains and made me frustrated,

irritated and annoyed. In the e-mails that I sent to Sapphire management, I explained that these

activities amount to torture and that I am going to take my claims to the Geneva court eventually

for relief. Sapphire management did nothing about the excessive noise disturbances.

4.4.20 May 13, 2016, I normally traveled to the police station to file noise complaint, but on that

day, I called the police to the St. Vincent building around 9 AM. I complained to Police Officer,

Nigel John, that I was awakened by a loud banging sound emanating from apartment 273 around

6:30 AM and that the noise disturbances have been going on for more than 3 hours. Further, I

explained that the loud banging sounds emanating from apartment 273 sound like hammering

and loud stomping. I asked the Police Officers to speak to occupants of apartment 273 and asked

them to cease so I can get some rest. After, speaking with defendant Moussa Mustafa the Police

Officers came back and calmly explained to me that the occupants of apartment 273 are not

hammering and that there is no damage to the floor of their apartment. Further, the Police

Officer, Nigel John, explained that Mr. Mustafa stated that "each time they flushed the toilet it

makes a banging sound and that there is a wheelchair in the apartment." I calmly explained to

Officer John that defendant Mustafa's explanations for the excessive noises made absolutely no

sense, because the occupants of apartment 273 were not flushing the toilet for more than 3 hours

and I don't know what is causing the banging sounds but the noise disturbances "sounds like

hammering".

4.4.21  Furthermore, On May 13, 2016, after the Police Officers left Sapphire Village premises,

the occupants of apartment 273 resumed making the same noise disturbances for another hour.

Finally, I heard the occupants of apartment 273 deliberately and purposely slammed the front

and screen doors of that apartment and I was able to fall back to sleep immediately.

4.4.22  May 22, 2016, I was awakened at about 1 AM by loud banging noises emanating from

apartment 273. I called Sapphire Security and complained about the noise disturbances and

requested for Sapphire management to enforce its "Quiet hours" Rules and Regulations.

Sapphire management did nothing and the noise disturbances continued. At about 2 AM, I called

the police to the St. Vincent building. I explained to the Police Officer, that I was awakened by

loud banging noise disturbances emanating from apartment 273 and if he can ask the occupants

of apartment 273 to cease so I can get some sleep because I am exhausted. The occupants did not

open the door when the Police Officer knocked. I pointed out the defendant's vehicle in the

parking lot to the Police Officer.

4.4.23 I sent Sapphire management more than 40 complaints about excessive noises emanating from apartment 273 and provided well over 50 audio and video recordings of the excessive noises emanating from apartment 273. In the e-mails, I explained to Sapphire management, that there are banging noises emanating from apartment 273 that sound like hammering and that the noise disturbances are occurring during the day and at night well past 11 PM and prior to 8 AM in violation of Sapphire Village Condominium Rules and Regulations. I stated that the noise disturbances are more intense and severe and do not stop at all, unless I leave my apartment.

4.4.24 May 13, 2016, the Police Office informed defendant Moussa Mustafa and Nora Ibrahim that the noise disturbances emanating from their apartment were interfering with the peaceful enjoyment of my apartment. But, Mr. Mustafa and Ms. Ibrahim failed to take any action to minimize or abate the excessive noises emanating from their apartment.

4.4.25 Defendants Moussa Mustafa and Nora Ibrahim deliberately and purposely made loud banging and stomping sounds for the entire time they were in possession of apartment 273. Additionally, defendants deliberately and purposely slammed the front and screen doors of their apartments repeatedly to intimidate and force me out of my home because I am black and from Haiti. The banging and stomping sounds and slamming of the front and screen doors of apartment 273 deprived me of sleep and rest. Furthermore, the excessive noises made it impossible for me to cook, read and write or watch television in my apartment.

4.4.26 I suffered physical pains, severe headache and exhaustion as a consequence of the excessive noises emanating from defendants Moussa Mustafa and Nora Ibrahim's apartment.

4.4.27 Basically, Moussa Mustafa and Nora Ibrahim tortured me.

4.4.28  Defendant Joanne Levesque failed to take any actions to minimize or abate the excessive noise disturbances that continued to emanate from her apartment.

Tenant-Apt 273)

4.4.29  Defendant Joanne M. Lévesque and Clarence Levesque owns apartment 273 and leased it to a new tenant from March 2018 to present.

4.4.30  Joanne Levesque's tenant is in sole possession and control of apartment 273.

4.4.31  Levesque's tenant is home all day.

4.4.32  Joanne Levesque's tenant conspired with the Association to make loud banging, stumping and screaking noise disturbances to cover-up the hammering noise disturbances that Moussa Mustafa made routinely during his tenancy in Defendant Joanne and Clarence Levesque's apartment to obstruct justice and drive me out of my home because black and from Haiti.

4.4.33 Pursuant to their conspiracy, Joanne Levesque's tenant started to deliberately and purposely make excessive noise disturbances the moment he arrived at apartment 273. He began construction noise disturbances around 7 a.m. that completely impaired my apartment the entire day. I did not receive any notice from any of the defendants. The construction noise disturbances last more than two weeks and I simply had to abandon my apartment during the day.

4.4.34  Joanne Levesque's tenant established a routine to cover up the hammering noise disturbances that defendant Moussa Mustafa made during his tenancy in apartment 273. He deliberately made loud banging, screaking and stumping noise disturbances all day and all night.

4.4.35  Pursuant to their conspiracy, he deliberately and purposely made loud stumping noise disturbances that cause the ceiling and ceiling fan of my apartment to vibrate to demonstrate that Moussa Mustafa was not banging a hammer after the fact.

4.4.36 The moment, I returned home from Lindquist beach around 6:30 p.m., he deliberately and purposely made loud banging and screaking noise disturbances that completely impaired my apartment until 2 a.m. I could not rest, read, write, listen to Mozart, Beethoven, Haitian music or watch television.

4.4.37  Joanne Levesque's tenant deliberately and purposely made loud banging noise disturbances that woke me early in the morning between 5 and 7 a.m., every day, thereby limiting me to 4 hours or less of sleep. Pursuant to their conspiracy, he deliberately and purposely made loud banging, stumping and screaking noise disturbances that prevented me from returning to sleep.

4.4.38  For example, April 15 through April 16, 2018, Joanne Levesque's tenant deliberately and purposely slammed the front and screen doors of his apartment repeatedly and he purposely and deliberately made loud banging, stumping and screaking noise disturbances that made the ceiling and ceiling fan to vibrate and impaired my apartment completely pursuant to their conspiracy to cover up the hammering noise disturbances that Moussa Mustafa made.

4.4.39  Another example, May 14 through May 16, 2018, Defendant deliberately and purposely slammed the front and screen doors of his apartment repeatedly; he deliberately and purposely made loud banging, stumping and screaking noise disturbances that caused the ceiling and ceiling fan of my apartment to vibrate and completely impaired my apartment in the morning and in the evening when I returned home from Lindquist beach.

4.4.40  March 26, 2018, tenants in Joanne Levesque's apartment deliberately and purposely attempted to open the front door of my apartment twice.

4.4.41  Pursuant to their conspiracy, he deliberately and purposely blocked my path on the walkway to instigate an altercation.

4.4.42  Joanne Levesque's tenant knew or should have known about my racial harassment complaint to Association and Joanne Levesque because I sent an email to sapphire village management everyday documenting the excessive noise disturbances that he made and continued to make every day.

4.4.43  Joanne Levesque's tenant failed to fix the screen doors of their apartment or abate the noise disturbances.

4.4.44  Consequently, I am suffering with severe exhaustion, headache, nausea, vomiting, worries, anxieties and severe emotional distress.

### 4.5        Excessive Noises Emanating from Defendant Bernard VanSluytman's Apartment 266

4.5.1    Apartment 266 is located on the second floor next to my apartment on the left in the St. Vincent building.

4.5.2    Defendant Bernard Vansluytman owns apartment 266 at 6700 Sapphire Village, St. Vincent building, St. Thomas, 00802.

4.5.3    Defendant Bernard Vansluytman visited apartment 266, March 21, 2016 and I observed defendant opened and held the screen door with great care as to prevent the screen door from slamming and making blurring noise disturbances.

4.5.4    Defendant Bernard Vansluytman knew that the screen door of apartment 266 was malfunctioning or broken and causing blurring noise disturbances when it closes but failed to repair the screen door prior to leasing apartment 266 to defendant Jonathon Morgan.

4.5.5    Defendant Bernard Vansluytman leased apartment 266 to defendant Jonathon Morgan April 2016.

4.5.6    Defendant Jonathon Morgan resided at apartment 266 in the St. Vincent building since April 2016 until the middle of August.

4.5.7    Defendant Jonathon Morgan was in sole possession and control of apartment 266.

4.5.8    Defendant Jonathon Morgan is Caucasian.

4.5.9    Defendant Jonathon Morgan deliberately, intentionally and recklessly made loud banging and knocking sounds every day in the morning between 6 AM and 7:30 AM and in the evening between 6 PM and 11 PM weekly to intimidate and force me out of my home because I am black and from Haiti. On the weekends defendant Jonathon Morgan made and continued to make loud banging sounds and knocking sound all day until 11 PM.  The loud banging and knocking sounds emanating from apartments 266 deprived me of sleep and rest. In addition, the sounds made it impossible for me to cook, read and write or watch television in my apartment. As a consequence of the noise disturbance emanating from defendant's apartment, I suffered chest pains, difficulty breathing, severe headache and exhaustion.

4.5.10  Starting in April 2016, the new tenant, defendant Jonathon Morgan, established a daily excessive noise routine that starts by deliberately waking me up from sleep with loud banging sounds that are followed by slamming of the front and screen doors of his apartment to intimidate and force me out of my home because I am black and from Haiti. Mr. Morgan repeated this process of entering and exiting his apartment several times between 6 AM and 7:30 AM. In addition, there are banging and knocking sounds emanating from defendant Jonathon Morgan's apartment from 6 AM to 7:30 AM. Each time, I tried to go back to sleep the banging and knocking sounds woke me up about every 10 to 20 minutes. I tried to keep my eyes open, but they closed involuntarily from exhaustion. The process of been awakened when I am about to

fall asleep is physically painful, irritating, annoying and frustrating. In the evening, the routine is repeated between 6 PM and 11 PM. But on the weekend, the routine goes from anywhere between 6 AM and 11 PM.

4.5.11  June 7, 2016, defendant Jonathon Morgan conducted his daily routine of excessive noise disturbances from 6 PM to 11 PM. Mr. Morgan deliberately and purposely slammed the front and screen doors of his apartment repeatedly to intimidate and force me out of my home because I am black and from Haiti. In addition, there were banging and knocking sounds emanating through the wall of Mr. Morgan's apartment. I called Sapphire Security and complained about the excessive noises emanating from apartment 266 and that I was going to call the police. The noise disturbances continued, and I called the police around 8:30 PM. I calmly explained to the Police Officer that defendant Jonathon Morgan had been making excessive noise disturbances since 6 PM to 11 PM and that the noise disturbances are causing me to suffer severe headache. The Police Officer knocked on Mr. Morgan's door, but he was not in the apartment and the door was opened. I observed that soon as the officer left, defendant Jonathon Morgan returned bare feet to his apartment.

4.5.12  June 11, 2016, defendant Jonathan Morgan conducted his weekend routine of making excessive noises from 6 AM to 11 PM. Mr. Morgan deliberately and purposely slammed the front and screen doors of his apartment repeatedly to intimidate and force me out of my home because I am black and from Haiti. In addition, there were banging and knocking sounds emanating through the wall of Mr. Morgan's apartment. I called Sapphire Security and complained about the excessive noise disturbances, but the Association failed to take any action. I went to the police station and filed a complaint about excessive noises emanating from

apartment 266 and I explained to the Police Officer that the noise disturbances have been occurring since 6:30 AM and continued well past 5 PM.

4.5.13   June 19, 2016, defendant Jonathon Morgan went through his routine and made excessive noise disturbances all day to intimidate and force me out of my home because I am black and from Haiti. I called Sapphire Security to complained about the excessive noises, but Mr. Morgan continued until about 12 AM. The next day, I suffered nose bleed and severe migraine.

4.5.14   Defendant Jonathon Morgan knew or should have known about the noise complaints that I made to Sapphire management because Sapphire Security told me each time I called to complain that they will send someone to his apartment. For example, June 23, 2016, I called Sapphire Security about excessive noises that are emanating from apartment 266 for about an hour. The Security Guard informed me that Mr. Morgan just got home. I explained to the Security Guard that I have been recording the noise disturbances for more than an hour and that Mr. Morgan's vehicle is in the parking lot. Therefore, it is Sapphire management's responsibility to stop the noise disturbance. Sapphire Security Guard knocked on Mr. Morgan's door, but he did not open his door. Once, the Security Guard had left, defendant Jonathon Morgan resumed making excessive noise disturbances. Furthermore, Mr. Morgan routine is to come in and out of his apartment and deliberately slammed the front and screen doors repeatedly. That day, defendant Jonathon Morgan left his apartment several times within an hour slamming the front and screen doors of his apartment and making loud banging noises.

4.5.15   June 26, 2016, around 8:30 AM after defendant Lourdes Cordero's short-term tenants left, defendant Jonathon Morgan started to make excessive banging noises.

4.5.16  June 27, 2016, I was awakened around 4:00 AM by loud banging sounds emanating from apartment 266 and the noise disturbances continued until I fall back to sleep around 5 AM. June 29, 2016, I was awakened around 6 AM by loud banging noise disturbances emanating from apartment 266 but I fall back to sleep, despite the banging noises because I was so exhausted because I only had 4 hours of sleep from the previous days.

4.5.17  I sent 14 letters to Sapphire Village Condominium Owners Association about excessive noise disturbances emanating from Defendants Bernard Vansluytman and Jonathon Morgan's apartment 266 from June 27 through July 15, 2016. I complained about the excessive construction noise emanating from apartment 266 from 8:30 AM to well past 7:30 PM, for an entire week between July 7 through July 10, 2016. The blurring construction noises that included loud banging and drilling practically impaired my apartment for the entire day. I had to leave my apartment because I could not sleep, rest, read, write or watch television in my apartment during the construction.

4.5.18  In the letters I sent to Sapphire Village Condominium Owners Association, I complained that defendant Jonathon Morgan has been making loud banging noise disturbances from 5:30 PM through 11 PM. In addition, I explained that Mr. Morgan is violating Sapphire Rules and Regulations. Specifically, I stated that on July 8, 2016, I was awakened at 4 AM by loud banging noise disturbances emanating from apartment 266 and July 11, 2016, Mr. Morgan deliberate and purposely made banging noise disturbances that woke me out of my sleep every hour from 2 AM through 7 AM. That day, I suffered with severe exhaustion, headache, and nausea.

4.5.19  July 15, 2016, I called the police at 1 AM to investigate loud banging noise disturbances that were emanating from Defendant Jonathon Morgan's apartment starting at 12 AM. I

explained to the police officer that defendant woke me up deliberately with loud banging noise disturbances each time I fall back to sleep within an hour.  Mr. Morgan spoke to the police officer that night and I was able to get some sleep until 6 AM when the defendant woke me up again with loud banging noise disturbances that lasted for an hour.

4.5.20  I did not make any noise complaint about the prior tenant of apartment 266. Although the screen- door slammed, she took great care not to allow the screen door to slam when it closed in the morning or late at night when she entered or exited her apartment. In addition, I did not hear any excessive banging or knocking sounds emanating from her apartment from October 2015 through March 2016.

4.5.21  I sent Sapphire management more than 150 excessive noise complaints and more than 50 audio and video recordings of the noise disturbances emanating from defendant Jonathon Morgan's apartment. In the e-mails that I sent to Sapphire management, I explained that there are loud banging and knocking sounds emanating from apartment 266 in the morning that are depriving me of much needed sleep and rest and that the noise disturbances are in violations of Sapphire Village Condominium Rules and Regulations. Sapphire management did nothing about the excessive noise disturbances.

4.5.22  July 16, 2016, I sent a letter to Sapphire Village Condominium Owners Association, explaining that defendant Jonathon Morgan continued to make loud banging noises in the afternoon from 5:30 PM to 11 PM. Further, I was awakened that morning by loud banging emanating from apartment 266 prior to 8 AM.

4.5.23  Defendant Jonathon Morgan took no actions to minimize or abate the noise nuisance or repair the screen door-closer. As a consequence of Mr. Morgan's actions, I suffered chest pains, difficulty breathing, nose bleed, severe headache and exhaustion.

4.5.24  July 30, 2016, Jonathon Morgan was conducting his routine of slamming the front and screen doors and making loud banging noises with his apartment door opened.  I was walking on the walkway of the St. Vincent building and I recorded loud banging noises emanating from Jonathon Morgan apartment. I observed him inside his apartment making the loud banging noises in the video. It is the same type of noises that Mr. Morgan made in the morning and at night since April 2016.

4.5.25  Basically, Defendant Jonathon Morgan tortured me.

4.5.26  Defendant Bernard Vansluytman took no actions to minimize or abate the excessive noise disturbances that continued to emanate from his apartment.

### Defendant Claudia Woldow

4.5.28  Defendants Bernard Vansluytman owns apartment 273 and leased it to Defendant Claudia Woldow from January 2018 to present.

4.5.29  Defendant Claudia Woldow is in sole possession and control of apartment 266.

4.5.30  Defendant is home all day.

4.5.31  Defendant Claudia Woldow conspired with the Association to make loud banging, and screaking noise disturbances to cover-up the loud banging noise disturbances that Defendant Jonathon Morgan made routinely during his tenancy in Defendant Bernard Vansluytman's apartment to drive me out of my home because black and from Haiti.

4.5.32  Pursuant to their conspiracy, Defendant Claudia Woldow started to deliberately and purposely make excessive noise disturbances the moment she arrived at apartment 266. She slammed the front and screen doors of apartment 266 repeatedly.

4.5.33  Defendant established a routine to cover up the loud banging noise disturbances that defendant Jonathon Morgan made during his tenancy in apartment 266. She deliberately and purposely made loud banging and screaking noise disturbances that wake me up several times in the middle of the night and in the morning.

4.5.34 The moment, I returned home from Lindquist beach around 6:30 p.m., she deliberately and purposely made loud banging and screaking noise disturbances that completely impaired my apartment. I could not rest, read, write, listen to Mozart, Beethoven, Haitian music or watch television.

4.5.35  For example, January 27, through January 30, 2018, Defendant deliberately and purposely slammed the front and screen doors of her apartment repeatedly and she purposely and deliberately made loud banging, and creaking noise disturbances that woke me from sleep several times during the night to cover up the loud banging noise disturbances that defendant Jonathon Morgan made during his tenancy in apartment 266.

4.5.36  Defendant knew or should have known about my racial harassment complaint to the Association and Bernard Vansluytman's because I sent an email to sapphire village management everyday documenting the excessive noise disturbances that she made and continues to make every day.

4.5.37  Defendant failed to take any actions to fix the screen door or abate the excessive noise disturbances.

4.5.38  Consequently, I am suffering with severe exhaustion, headache, nausea, vomiting, worries, anxieties and severe emotional distress.

### 4.6    Excessive Noises Emanating from Madlon Jenkins-Rudziak's Apartment 274

4.6.1    Madlon Jenkins-Rudziak owns apartment 274 at 6700 Sapphire Village, St. Vincent building, St. Thomas 00802.

4.6.2  Madlon Jenkins Rudziak leased apartment 274 to James Koulouris and another man since October 2015, through November 2017.

4.6.3    Defendant James B. Koulouris was in sole possession and controlled of apartment 274.

4.6.4    Defendant James Koulouris and another man shared the same vehicle a black jeep, plate number TEK-741 U.S. Virgin Island. When defendant James Koulouris's vehicle is parked at the St. Vincent building there are excessive noises emanating from apartment 274.

4.6.5    Defendant James Koulouris and his family deliberately and purposely slammed the front and screen doors of their apartments repeatedly causing loud banging sounds that reverberated throughout my apartment for more than 2 hours to intimidate and force me out of my home because I am black and from Haiti.

4.6.6    Defendant James Koulouris knew that the screen door of apartment 274 slammed when it closed, because of the blurring noise disturbance.

4.6.7    July 21, 2016, the occupants of apartment 274 deliberately and purposely made loud banging and screaking noise disturbances for more from 7 AM through 10 AM to intimidate and force me out of my home because I am black and from Haiti. I sent a letter to Sapphire Village Condominium Owners Association, explaining the nature and extent of the noise disturbances emanating from apartment 274. I requested that Sapphire management informed the owners and

occupants of apartment 274 that they are causing noise disturbances that are interfering with my

sleep and rest. In addition, the noise disturbances are preventing me from reading, writing and

watching television.

4.6.8   July 23, 2016, I sent a letter to Sapphire Village Condominium Owners Association,

explaining that the occupants of apartment 274 made loud banging noise disturbances from 8 PM

through 10 PM that interfered with the lawful and peaceful enjoyment of my apartment.

4.6.9   July 24, 2016, I sent a letter to Sapphire Village Condominium Owners Association,

about the excessive noise disturbances that continued to emanate from apartment 274. I

explained that occupants of apartment 274 purposely made loud banging and screaking sounds

around 9 PM for more than one hour. The noise disturbances prevented me from resting, writing

and reading.

4.6.10  July 25, 2016, James Koulouris and his family started making banging and screaking

sounds from 7 AM through 10 AM. I observed Mr. Koulouris's vehicle in the parking lot of the

St. Vincent building and when I exited my apartment, Mr. Koulouris and his family also exited

their apartment and ran down the stair to the vehicle.  Later that day, around 4 PM the occupants

of apartment 274 went wild with noise disturbances.  The occupants purposely and deliberately

made loud banging and screaking sounds for more than 3 hours continuously to intimidate and

force me out of my home because I am black and from Haiti. The noise disturbances woke me

from a nap and prevented me from reading, writing or watch television. Essentially, defendants

impaired my apartment for the entire day. About 9 PM defendants resumed making loud banging

noise disturbances and loud screaking sounds well past 12 AM to intimidate and force me out of

my home because I am black and from Haiti.

4.6.11  July 26, 2016, James Koulouris and his family deliberately and purposely woke me out of my sleep around 7 AM with loud banging sounds that went well pass 10 AM to intimidate and force me out of my home because I am black and from Haiti. Each time I fall asleep, I was awakened suddenly by a loud banging or screaking sounds emanating from apartment 274. Around 12 PM, defendant James Koulouris and his family purposely and deliberately slammed the front and screen doors of apartment 274 repeatedly until 1 PM, to intimidate and force me out of my home because I am black and from Haiti. In addition, Mr. Koulouris family ran up and down the stairs and walkways of apartment 274 repeatedly and deliberately stomping their feet causing loud sounds that interfered with the peaceful enjoyment of my apartment. I could not use the kitchen to make something to eat because of the excessive noises.

4.6.12  July 26, 2016, I sent a letter to Sapphire Village Condominium Owners Association, stating that James Koulouris and his family and other occupants of apartment 274 are purposely and deliberately violating Sapphire Rules and Regulations and by-laws to intimidate and force me out of my home because I am black and from Haiti.

4.6.13  In addition, July 26, 2016, I came home around 4 PM, I observed James Koulouris vehicle in the parking lot of the St. Vincent building. James Koulouris deliberately and purposely made banging and screaking sounds from 4 PM to well past 6 PM, to intimidate and force me out of my home because I am black and from Haiti.

4.6.14  July 27, 2016, James Koulouris and his family made loud banging and screaking sounds in the morning that woke me out of my sleep repeatedly from 7 AM through 8 AM.

4.6.15  Defendant Madlon Jenkins-Rudziak took no actions to minimize or abate the excessive noise disturbances that continued to emanate from her apartment.

### 4.7      Sapphire Village Condominium Owners Association

#### Excessive Construction Noise

4.7.1    In the e-mails that I sent to Sapphire management, March 1, 2016, I made Sapphire

management aware that they are causing severe and intense noises that are interfering with the

enjoyment of my apartment. Specifically, I stated that Sapphire management is not an innocent

third party but an active participant that coordinated the harassment and made excessive noise

disturbances to force me out of my home because I am black and from Haiti.

4.7.2    During the first year living at Sapphire Village Development, Sapphire management

made more constructions and repairs on the St. Vincent building than the other 6 buildings in the

Sapphire Village Development because I complained about excessive noises emanating from my

white neighbors' apartments and the Association targeted my apartment during the constructions

for more noise disturbances to force me out of my home because of my race and national origin.

4.7.3    Defendant Sapphire Village Condominium Owners Association conducted four major

construction projects on the St. Vincent building between October 2015 through March 2016.

The constructions were on the following part of the St. Vincent building: (1) One underneath the

building, (2) One on the front of the building, and (3) Two on the roof of the building.  The

constructions activities started at 9 AM and end around 6 PM with each lasting between one to

four weeks.

4.7.4    The construction crews number between two to six construction workers. The equipment

that were used include but not limited to: Aerial work platform; Jackhammers and breakers;

Drills, Welders; Power Equipment; Hammers and ladders.

4.7.5     Defendants Sapphire Village Condominium Owners Association failed to provide

warning or post notice for any of the constructions projects on the St. Vincent building.

Specifically, there were no construction notices posted on the St. Vincent building for any of the

construction projects. I find out about each construction project when I am awakened by the loud

banging or drillings.

4.7.6    Sapphire management and construction crew knew or should have known that I was

home because several times I went outside to observe and document the excessive construction

noises near my apartment. The construction crews knew I was home because they saw me

standing on my balcony when they were banging a hammer deliberately and intentionally to

create blurring noise disturbances.

4.7.7    December 12, 2015, I was awakened by loud construction noises that lasted the entire day

for one week. The construction workers deliberately made blurring noises that impaired my

apartment the entire day. Defendant Mark Marolf, Property Manager, knew I was home during

the day because he replied to my complaint about excessive noises.  I observed construction

workers on the roof of the building with drilling equipment. As a consequence of the loud

drilling noises, I could not sleep, watch television, or read a book. I simply had to leave the

apartment during the day.

4.7.8    February 1, 2016, I was awakened in the morning by loud construction noises emanating

from the front of the St. Vincent building. The construction activities lasted for approximately 3

to 4 weeks.   The loud banging noises caused my apartment to vibrate and made it impossible to

remain inside, even with the door and windows closed.

4.7.9    Sapphire management directed the construction workers to deliberately and intentionally

target my apartment for more noises by stationing the Aerial platform and construction vehicles

directly in front of my bedroom window. The Aerial platform's engine was loud and made loud

beeping sounds each time the crew adjusted the crane to work on a different section of the roof.

In addition, the construction crew congregated with their equipment right in front of my balcony

and yelled directions at each other. For example, March 24, 2016, I was awakened in the

morning by loud construction noises coming from the roof of the St. Vincent building. I

observed construction workers on an Aerial work platform removing part of the roof of the

building with drills. The construction became extremely loud when the construction workers

started to work above my apartment. I observed one of the construction workers deliberately and

purposely banging a hammer repeatedly on the part of the roof right in front of my balcony, but

during the entire four weeks the construction crew did not use a hammer for the other part of the

roof. In addition, the construction crew spent an extra week working on the section of the roof

right above my apartment and made an extreme amount of noises, drilling and hammering that

caused my apartment to vibrate. I was unable to use my apartment during the four weeks'

construction for the entire day, even with the door and windows closed.

4.7.10 March 30, 2016, I sent Sapphire management an e-mail and made them aware that the

excessive construction noises are effecting my health and that I was suffering with nose bleed.

4.7.11 In addition, the Association failed to provide any notice of the constructions on the St.

Vincent building. As such, I was home each time they started making extremely loud

construction noises that completely impaired my apartment. I simply had to abandon my

apartment.

4.7.12 Furthermore, the Association continued to have major construction on the St. Vincent

building creating massive noise disturbances that completely impaired my apartment.

### 4.8    Sapphire's Maintenance Employees Excessive Noise Disturbances

4.8.1    Defendant Sapphire Village Condominium Owners Association directed its maintenance

staff to deliberately and intentionally target areas right by my apartment in the St. Vincent

building to perform landscaping and gardening duties between 7 AM and 8 AM. The

landscaping and gardening activities caused excessive noise disturbances early in the morning

that deprived me of sleep and rest from November 2015 through presently.

4.8.2    The landscaping equipment included: handheld lawnmowers, chain saws, ratchet

prumers, and hedge trimmers.  Specifically, November 4, 2015, Sapphire's maintenance staff

made banging noises with gardening equipment at 7:30 AM across from my apartment in front

of the St. Vincent building that interfered with my sleep even with my door and windows closed.

4.8.3    November 11, 2015, Sapphire's maintenance staff made excessive noise disturbances

with gardening equipment in front of the St. Vincent, building during the early morning hours,

that interfered with my sleep even with my door and windows closed.

4.8.4    November 22, 2015, Sapphire's maintenance staff made excessive noise disturbances by

my apartment that interfered with the peaceful enjoyment of my apartment.

4.8.5    December 7, 2015, Mark Marolf made loud banging noises, in the middle of the day,

while he was during repairs in apartment 266. And I had to leave my apartment.

4.8.6    February 17, 2016, Sapphire's maintenance staff made excessive noise disturbances by

the door of my apartment while cleaning in front of the St. Vincent building, around 8:49 AM

and the noises interfered with my sleep.

4.8.7    March 22, 2016, Sapphire maintenance's staff made loud banging noises that interfered

with my sleep. I observed Sapphire's maintenance staff drilling and hammering the door of

apartment 275 before 9 AM.

4.8.8    December 5, 2017, the Association's employee deliberately and purposely caused rocks to hit the sliding glass door of my apartment during his landscaping this morning, that caused massive noise disturbances. As such, I could not sleep or rest. Consequently, I suffered with severe migraine, exhaustion, chest pains, difficulty breathing, dizziness, nausea and severe physical and emotional pains.

4.8.9    I have sent numerous complaints to the Association and they have done nothing to address any of my complaints. I have also made several video recordings of me closing the front doors of my apartment and made no noises at all. Instead the Association is using its employees to harass me around the development. The Association's employees acting within the scope of their employment deliberately and purposely blocked my path with their golf carts and almost hit me, thereby terrorizing me to the utmost degree; they deliberately and purposely lunged at me and blocked the walkways causing me to fear grave bodily injury; they deliberately and purposely caused rocks to hit the glass window of my apartment. As a result, they have created a hostile environment for me at Sapphire Village.

4.8.10   In addition, December 1, 2017, Sapphire's management continued to make loud banging noises that completely impaired my apartment during the entire day. About 9 a.m., Sapphire's management sent someone to bang on the door of my apartment repeatedly. As such, I am not able to rest, sleep, read or write in my apartment, and I am forced to leave my apartment for the entire day.

4.8.11   The discriminatory practices described above were carried out:

    (a) at the direction of and with the consent, encouragement, knowledge, and ratification
    of Defendants;

(b) under Defendant's authority, control, and supervision; and/or

(c) within the scope of Defendants' employees' employment.

4.8.12 Defendants are liable for the unlawful acts of its employees, agents and/or representatives directly and/or under the doctrine of *respondeat superior*.

4.8.13 The Association took no actions to minimize or abate the excessive noise disturbances that continued to emanate from the surrounding apartments.

### 4.9     Jacqueline Lindberg Racial Harassment and Intimidation

4.9.1   During the month of October 2015, defendant Jacqueline Lindberg appeared and spoke to me in Spanish when I walked on the walkway in front of the St. Vincent building.

4.9.2   During the month of October 2015, defendant Jacqueline Lindberg appeared on the walkway in front of the St. Vincent building and stated, "Here is the character," "Are you knocking your head against the wall or something?" I ignored her and walked away.

4.9.3   During the month of October 2015, several times I returned home to find Defendant Jacqueline Lindberg seating on a little chair on the walkway beside the wall of my apartment.

4.9.4   During the month of October 2015, several times I returned home to find Defendant Jaqueline Lindberg's little chair empty on the walkway beside the wall of my apartment.

4.9.5   October 27, 2015, defendant Jacqueline Lindberg appeared, on the walkway, with a transparent plastic container that had food and bread. I ignored Ms. Lindberg and walked away. Later that day, I returned home to find the container with food in front of the door of my apartment.

4.9.6   October 27, 2015, I filed a complaint with the police about excessive noise disturbances emanating from apartment 273 and 257 and I explained to the police that defendant Jacqueline

Lindberg was stalking and harassing me. Several times, I left my apartment she appeared on the walkway and begun to speak to me.

4.9.7    November 4, 2015, Defendant Jacqueline Lindberg appeared and stated that it would be like hell for me in the complex....666.

4.9.8    During the month of June, several times Defendant Jaqueline Lindberg made snares and weird faces at me, while I was standing on the walkway in front of my apartment.

4.9.9    June 11, 2016, Defendant Jacqueline Lindberg stated that "don't fuck with me brother" while I was standing on the walkway in front of my door.

### 10.    Owners, Tenants and a Group of Individuals Harassment

4.10.1   Each time, I went swimming at Sapphire beach the neighbors and group of individuals waited to harass and intimidate me. The neighbors and group of individuals performed street theater, made threats, blocked my path on the sand and in the water, exaggerated their movement standing on the sand or in the water or moved their head wildly, thereby causing me to fear bodily injuries.

4.10.2   Each time, I visited Sapphire Beach to swim, the neighbors and group of individuals blocked my path. Specifically, on December 28, 2015, a woman and a child recklessly drove her sailing board toward my head while I was swimming. I had to jump to the side to avoid hitting my face.

4.10.3   On January 4, 2016, a group of men repeatedly threw their football at my direction to provoke me and there have been several instances the ball almost hit me. These individuals also deliberately splashed water at me with their feet and other objects to irritate and provoke me.

4.10.4   On January 6, 2016, I started going to the beach after 4:30 PM because the group of individuals that were brought in leaved at 4 PM. However, they stayed past 4:30 PM to harass

me. On that day, several men deliberately blocked my path in the water, wildly moved their heads in my direction and splashed water at me, thereby causing me for fear bodily injuries.

4.10.5 April 30, 2016, a group of individuals that were staying in apartment 259 of the St. Vincent building followed me to Sapphire Beach. I was walking on the beach, when a white man about 6 feet 2 and weighing more than 300 lb., with another white man and two white women were walking by me. I was passing them when the man said to me "I will beat it the shit out of you" I looked back, and he was signaling for me to come back to fight him. I was frightened but I continued to walk away from him and documented the incident. An entire week after the incident, the man and his family continued to appear each time I went to the beach or left the beach area to go back to my apartment. I ignored all of them, but the man spoke louder saying things like "JR".

4.10.6 November 9, 2016, I went to Sapphire Village Development's office to complain about excessive noise disturbances that emanated from Joanne Levesque's apartment all night and limited me to 2 hours of sleep. In the office, one of the white neighbors stated, "new administration." She was referring to the fact that Donald Trump won the election and implied that the neighbors are now allowed to make excessive noise disturbances to drive me out of my home because I am black and from Haiti. In addition, December 18, 2016, a white male neighbor in apartment 269 stated "I really don't like you." "you better walk away…. that's right walk away from here." And "that black guy is a bum" and "he wears the same clothes every day." And he followed me to the post office.

4.10.7 Finally, March 24, 2017, a gang of individuals came to my apartment around 2 a.m. to scream, knock, pull and kick my front door. I called Sapphire security and informed them that a group of individuals are trying break into my apartment and that they are screaming, knocking,

48

pulling and kicking my front door. Sapphire security did absolutely nothing. The group of individuals returned five minutes after I called Sapphire Security and tried to kick my front door opened. I called 911 and while I was on the phone with the operator, the group of individuals continued to deliberately and purposely bang and kick my front door for 6 minutes. When the police arrived, I explained to the police that I don't know who these individuals are because I did not open my door. Neither Sapphire Security nor the property manager came to investigate the neighbor's harassments

### 4.11    Sapphire Village Condominium Owners Association Disparate Treatment of Me

4.11.1 Defendants Sapphire Village Condominium Owners Association have been treating me and continued to treat me differently and unfairly from the other white tenants and owners at Sapphire Village Condominium Development.

4.11.2 October 2015, when the white neighbors made noise complaints allegations about purported excessive noises emanating from my apartment, the Board of Directors, of Sapphire Village Condominium Owners Association, acted zealously and aggressively to establish that I was making the noise disturbances. Mark Marolf, Property Manager, called the police twice to my apartment and he was accompanied with Sapphire Security Guards. But, Sapphire management has not called the police about any of the noise complaints that I made. Further, Mr. Marolf, the police and Sapphire Security Guard examined every room in my apartment for sign of damages or items that can be used to make excessive noises for more than 30 minutes. I answered every questioned that the Police Officer and Mr. Marolf asked. At the end of the investigation, Sapphire Security Guard and the Police Officer concluded there is nothing here.

4.11.3  October 9, 2015, Mark Marolf and Sapphire Security came to my apartment to purportedly investigate noise disturbances that were emanating from my apartment. But, this time I realized that Sapphire management was acting in bad faith because I had observed on October 5, 2015 that all of the front and screen doors in the St. Vincent building slammed when it closed creating blurring noises. So, I refused to provide access to my apartment to Sapphire management. Mr. Marolf and Sapphire Security Guard were so aggressive they followed me around the entire development of 5 acres until I got to the entrance of the Development and Mr. Marolf stated, "I am going to follow you everywhere you go, until you speak to me." Mark Marolf and Sapphire Security Guard never followed any of the white tenants when they left, after I called the police. And yes, the tenants have fled after I called the police about the noise disturbances and returned to their apartments once the Police Officer leaved.

4.11.4  By the end of October 2015, I received a letter from Sapphire Village Condominium Owners Association, Board of Directors, addressing the white neighbors' complaints about purported noises emanating from my apartment.  The letter was from defendant Sidney Jarvis, President of the Board of Director, of Sapphire Village Condominium Owners Association and it stated that I was not in compliance with Sapphire Rules and Regulations and Code of Conduct. I responded to the letter with supporting documentations and stated the excessive noises are emanating from apartment 273 and 257. Also, I submitted a sample of audio recordings of the noises emanating from both apartments. Mr. Jarvis owns apartment 261 in the St. Vincent building and Mr. Jarvis' screen door also slammed when it closes.  Further, Mr. Jarvis is fully aware that all the apartments in the St. Vincent building screen doors slammed because of the blurring noise, except for apartment, 265. Mr. Jarvis did not send a similar letter to any of the residents in apartment 273 and 257.

4.11.5  January 25, 2016, I sent an e-mail to defendant Mark Marolf, informing him that I came

home to find the door knob of my apartment damage again. Mr. Marolf, stated "call the police"

Sapphire management never sent the Security Guard to investigate the damage to my door. But,

Mr. Marolf called the police twice to my apartment about noise disturbances. In addition, the

Association's staff damaged my front door on two occasions. Specifically, February 16, 2016,

Sapphire' maintenance staff pulled and damaged the front door of my apartment.

4.11.6  Furthermore, I called the police to the St. Vincent building to complain about the

excessive noises that were emanating from the neighbors' apartment for hours and Sapphire

management had failed to put an end to the noise disturbances. Not once, did Mark Marolf,

Property Manager, or Sapphire Security Guard accompanied the police to investigate the noise

disturbances. Sometimes, I am so exhausted I fall asleep before the police arrived and I do not

even hear them knocking on the door. The next time I called the police they told me that they

came to my apartment door, but I did not answer it.

4.11.7  February 24, 2016, Sapphire Village Condominium Owners Association Board of

Directors sent me a letter stating in pertinent parts that Sapphire Village Condominium Owners

Association, Board of Directors, only prevent unreasonable noise and promote a quiet

environment and that I failed to cooperate in the investigation of my complaint. Specifically, I

prevented the property manager from verifying the noise in the audio recordings as to when,

where, how and by whom these recordings were made. The Board of Directors stated that they

will do nothing about the noise disturbances, the vandalism to my door and the racist activities of

the neighbors. The letter served as another example of Sapphire Village Condominium Owners

Association acting in bad faith and treating me differently and unfairly from the other neighbors.

4.11.8  December 2015, I made Sapphire management aware that I purchased a better recording

device that captured the excessive noises emanating through the walls and ceilings of the neighbors' apartments. And in the recordings, anyone can hear the loud banging and slamming of the doors loudly and I sent daily recordings of the noise disturbances to Sapphire management.

4.11.9 Furthermore, Sapphire management made excessive noise disturbances themselves and therefore Sapphire management's wrongful conducts promoted, encouraged emboldened the owners and tenants to continue making excessive noise disturbances. Sapphire management acted in bad faith and therefore cannot conduct a fair investigation of the source of the noise nuisance. Allowing Sapphire management to determine whether the noise disturbances emanating from the neighbors are unreasonable would be like, allowing a co-conspirator of a crime to determine whether the acts of his partners are harmful to a victim of that crime. The letter is an attempt to cover their unlawful, irresponsible and reckless activities of deliberately, purposely, intentionally and recklessly allowing the front and screen doors of their apartments in the St. Vincent building to slam when it closes, all day and all night and harassing me. As a consequence of the noise disturbances I am deprived of the use and enjoyment of my apartment.

4.11.10 June 14, 2016, the landlord forwarded me a letter from Sapphire Hill Village Condominium Owners Association's attorney Michael Fitzsimmons. In the letter, Sapphire Village Condominium Owners Association threatened to take legal actions against me for purported violations of V.I. criminal code and several civil claims.

4.11.11 Michael Fitzsimmons's May 26, 2016, letter states that " A number of legal issues arise from Mr. Dorval's occupation of Unit 265 including: (1) V.I. criminal code violations such as making threats, assault, harassment, and disturbance of the peace; (2) Civil Claims for tortuous

interference in the business of unit owners who lose revenue and reputation as a result of Mr.

Dorval' conduct, which may lead to money damage awards and injunctive relief; (3) Civil claims

for private nuisance by resident of the condominium, which may lead to money damage awards

and injunctive relief; (4) Civil claims for public nuisance by the Association, which may lead to

money damage awards and injunctive relief; (5) Civil claims for physical injuries, if Mr. Dorval

commits a battery upon another person; Civil actions for injunctive relief based upon violations

of condominium By-Laws Article V Sections 9 and 11(c) and 11 (d). Further, the letter indicates

that the neighbors had filed several police reports about me.  All the allegations in the

Defendant's letters are false and really are just racial profiling fantasies. The letter is racist and

characterized me as a criminal because I am black and from Haiti. Moreover, Michael

Fitzsimmons wrote the letter on his own for to prevent me from filling a lawsuit against the

Association, Wallie Hamed and Moe's Fresh Market and to coerce my landlord to force me out

of my home because I am black and from Haiti.

4.11.12 June 14, 2016, the landlord forwarded me, another letter from Sapphire Village

Condominium Owners Association's attorney Michael Fitzsimmons, stating in pertinent part that

he had sent a letter, dated May 26, 2016, about serious, on-going problems caused by me. The

June 8, 2016, letter from Michael Fitzsimmons, states "at least two other unit owners have

suffered direct economic losses caused by Mr. Dorval; they have recently contacted me about the

matter. One of these owners instructed me to file a lawsuit against Mr. Dorval to recover the

money lost because of his threatening behavior. Another owner is considering joining that

lawsuit but has not yet signed up."

4.11.13 The June 8, 2016, letter from Michael Fitzsimmons further states that the Sapphire Village Condominium Owners Association is considering taking action against Emad O'Baidi to enforce various By-laws and Rules and Regulations including By-Laws Article V, Section 11(c). That section provides that "No nuisances shall be allowed on the Property nor shall any use or practice be allowed which is a source of annoyance to its residents or which interferes with the peaceful possession or proper use of the property by its residents." And that "Mr. O'Baidi 's failure to take action permits Mr. Dorval interference with the peaceful use of the property by all residents." These letters expressed the desire of the owners and tenants to force me out of my home because I am black and from Haiti, and they do not like me. In the letter, Michael Fitzsimmons on his own racial profiled and characterized me as violent criminal that is scaring away tourist, tenants and owners at Sapphire Village Condominium Development. Mr. Fitsimmons and the Associations' allegations and assumptions are prejudice and racist. The allegations made by Michael Fitzsimmons and the Association are stereo types that some white people have about black men in general, such as black men are violent, aggressive and a nuisance. Michael Fitzsimmons wrote the two letters, after I called the police to the St. Vincent building because Defendant Moussa Mustafa was hammering something in his apartment on a routine basis for hours in the morning. However, one of the tenants, unsolicited, told the police about the Association, owners and tenants' conspiracy to force me out of my home to obstruct justice because I am black and from Haiti. As such, Michael Fitzsimmons conspired with Wallie Hamed, the Association, owners and tenants to send two letters to my landlord to intimidate, threaten me and my landlord with criminal prosecution and to coerce my landlord to evict me to obstruct justice and force me out of my home.

4.11.14 It is 2018 not 1818, I should be allowed to live anywhere and have access to all places of

public accommodation without been discriminated and forced to move out of my home because I

am black and from Haiti. These allegations in Mr. Fitzsimmons letters are baseless and grounded

on racial fantasies that Michael Fitzsimmons, owners, tenants and the Association have about

black people in general. As a matter of fact, I have never interacted in any manner with any of

the neighbors or tourist at Sapphire Village; I have never said one word to any of the neighbors

or tourist at Sapphire village; I have gone out of my way to avoid the neighbors or tourist; I have

never tried to make contact with any of the neighbors nor visited any of the neighbors' apartment

and I have never been to the third floor of the St. Vincent building. But, on June 27, 2016,

Lourdes Cordero's short-term tenants went up the second floor and tried to open my apartment

door. The reality is that these lawless bullies and morally bankrupt people at Sapphire Village

Development have done everything under the sun to force me out of my home because I am

black and from Haiti. They have threatened me with death and serious bodily harm; they

conspired to create and make excessive noise nuisance; they organized to harass and intimidate

me to force me out of my home because I am black and from Haiti. It is not "IF", the neighbors

committed assault and battery when the hit me in the water and deliberately threw a water bottle

at my head. Sapphire Village Condominium Owners Association and Board of Directors added

and abated these individuals to violate federal and Virgin Island criminal laws by condoning

these acts and harboring the actors.

### 4.12.  UNLAWFUL SEARCH AND SEIZURE AND INVASION OF PRIVACY

4.12.1  The Association engaged in egregious and outrageous conducts when they unlawfully

searched my home and trash. The Association has already conducted an unlawful discovery in all

three related claims, when they unlawfully entered my apartment on April 18, 2017, without my permission, warrant, authority, justification or exigency while I was having eye and facial surgery in Florida. The Association unlawful search and seizure of my apartment without a warrant and tempered and destroyed my properties, when I went to Florida in April 2017, for surgery. They unlawfully entered my apartment to still pictures and video recordings. So, they deliberately and purposely entered my apartment without my permission to still documents, pictures and video recordings to cover up their unlawful conducts and obstruct justice after they conspired to kill me on the sidewalk.

4.12.2  Furthermore, they deliberately and purposely broke my HP color printer and tempered with my Xerox printer. The HP color printer was working before I left my apartment, but when I returned home the HP printer stop printing. They also deliberately and purposely tempered with the Xerox printer to cause a line to appear on the document when I used the feeder to make copies. They did this to prevent me from continuing to file document about their unlawful, malicious, reckless and discriminatory conducts with this Court.

4.12.3  In addition, they took pictures and video recordings of my apartment and documents; they deliberately opened my suitcases and made copies and stole flash drives and various documents that are now missing. As consequence of these outrageous conducts, I have suffered anxiety, worries, weight loss and severe emotional distress.

4.12.4  I cannot throw out my trash doing the day because the Association's employees, tenants and owners followed me to the trash receptacle and waited for me to place my trash on the bans. Then, they searched my trash for documents to support their unlawful conducts. As a

consequence of these outrageous conducts, I have suffered anxiety, worries, weight loss and severe emotional distress.

4.12.5  October 7, 2017, the Association sent two men to search my apartment under false pretenses without permission, warrant, authority, justification and exigencies. The two men impersonated the national guards and they pretended that the national guards were visiting each building in St. Thomas to ensure that it was safe for occupation after the two hurricanes. Further, they had a truck park outside pretending to be a military truck, while one of the neighbors explained to the others that the national guards are making sure the buildings are safe. They came into my apartment with an iPad and heat sensing equipment and made a thorough search of my apartment and took pictures and video recordings. They went into my bedroom and removed documents and took pictures of documents in my bedroom.

4.12.6  When I was leaving my apartment, they sent a hurricane relief car to the St. Vincent building to pretend that it was real. They tried to pretend that the hurricane relief workers were going door to door bringing food to residents of the U.S. Virgin Islands. Afterward, I noticed that some of my documents and flash drives are missing, including documents that the Association had left in my apartment when they unlawfully entered my apartment. Therefore, this was an unlawful search without a warrant to obtain evidence to prevent this Court from granting me a motion for injunctive reliefs against Sapphire Village Condominium Owners Association and Moe's Fresh Market.

4.12.7  I had repeatedly refused to provide access to my apartment after October 9, 2015 and I have never provided any consent for the Association to enter my apartment for any reasons. I have only allowed them to my apartment May 18, 2018, because the Association deliberately and

purposely turned off the water in my apartment May 15, 2018, the day before I went to

deposition for Dorval v. Moe's Fresh Market. As a result, I did not have any water to shower,

wash dishes and brush my teeth, so the landlord agreed to provide access to the apartment, so

that I can have water.

## V. CLAIMS

## COUNT 1: VIOLATION OF FAIR HOUSING ACT § 3601, et seq

### (Against All Defendants)

5.1.1    I reallege and incorporate by reference the remainder of the allegations in this Complaint.

5.1.2    Defendants conspired, planned and agreed to violate and continued to violate the Fair

Housing Act of 1968, as amended in 1988, 42 U.S.C § 3601, et seq, U.S Virgin Island Law

Against Discrimination, V.I. Code Ann. tit. 10, §64 and 42 U.S.C. §§ 1981 and 1982 because of

discrimination based on race and interference with fair housing rights.

5.1.3    I rent a one-bedroom apartment at 6700 Sapphire Village, Apartment 265, St. Vincent

Building, St. Thomas, 00802.  I signed a one-year lease agreement with Mr. Emad O' Baidi,

owner of apartment 265. The lease started on October 1, 2015 and I live alone, and I don't have

any family or friends in the U.S. Virgin Islands.

5.1.4    Defendants discriminated and continued to discriminate against me by conspiring and

allowing the owners and tenants in the St. Vincent building to intentionally and reckless remove

parts of the screen door-closer or cause the screen door-closer to malfunction.  Defendants are

aware that the screen door slammed when it closes because Sidney Jarvis, Board President of the

Association, owns apartment 261 in the St. Vincent building and his screen door slammed as well, creating blurring noise disturbances.

5.1.5    Defendants discriminated and continued to discriminate against me by refusing to enforce its Rules and Regulations and By-laws and allowing the tenants in apartment 273, 266, 257 and 274 to intentionally make excessive noise disturbances that are interfering with the peaceful enjoyment of my apartment to drive me out of my home because of my race and national origin.

5.1.6    Defendants discriminated and continued to discriminate against me by intentionally authorizing four major construction and repair projects on the St. Vincent building more than the other 6 buildings in the development to purposely, deliberately and intentionally make and create excessive construction noises and vibrations early in the morning that interfered with the enjoyment of my apartment in order to drive me out of my home because I am black and from Haiti. Defendants' construction crew intentionally targeted my apartment for more noise disturbances during the construction by purposely and deliberately stationing their construction machinery, vehicles and equipment in front of my bedroom window and spending more hours and days working on the section of the building where my apartment is located. Furthermore, when the construction crew noticed or knew that I was home, they used different tools to purposely and deliberately make excessive loud banging noise disturbances that were not made at the other sections of the building.

5.1.7    Defendants discriminated and continued to discriminate against me by directing and instructing its maintenance staff to intentionally make loud banging noise with their landscaping and gardening tools early in the morning in the areas of my apartment to drive me out of my home because I am black and from Haiti.

5.1.8   Defendants discriminated and continued to discriminate against when they harassed, intimidated and stalked me to drive me out of my home because I am black and from Haiti.

5.1.9   Defendants continue to intentionally and deliberately make excessive noise disturbances that are interfering with the enjoyment of my apartment to intimidate and force me out of my home because I am black and from Haiti, since October 5, 2015 to present.

5.1.10  Defendants knew or should have known about the excessive noises disturbances emanating from their apartments because Mark Marolf informed the owners and tenants of my noise complaints. Further, I sent numerous letters to the Association requesting that they informed the owners and tenants about my excessive noise disturbance complaints.

5.1.11  Defendants had numerous opportunity to correct the nuisance that their tenants and cleaning services are causing since October 2015 to present. Furthermore, Defendants failed to repair the screen door-closer that is causing blurring noise disturbances all day and night.

5.1.12  Defendants violations of the FHA and the Civil Right Act of 1968 have harmed and will continue to harm me in the future.

5.1.13  By their acts described above, Defendants tortuously interfered with my peaceful and lawful enjoyment of my apartment.

5.1.14  On account of Defendants' conduct, I was deprived and continued to be deprived of the use of my bedroom and much needed sleep and rest.

5.1.15  On account of Defendants' conduct, I suffered severe emotional distress, chest pains, difficulty breathing, nose bleed, severe headache and exhaustion.

## COUNT 2: VIOLATION OF THE FAIR HOUSING ACT § 3617

### (Against All Defendants)

5.2.1   I reallege and incorporate by reference the remainder of the allegations in this Complaint.

5.2.2   Defendants violated 42 U.S.C. § 3617, et seq, and U.S. Virgin Island Law Against

Discrimination, V.I. Code Ann.tit. 10, § 64 based on race and national origin.

5.2.3   Defendants were in sole possession and control of their apartments.

5.2.4   Defendants purposely, deliberately and intentionally made loud banging noises and

slammed the front and screen doors of their apartments repeatedly causing noise disturbances

that interfered with the peaceful enjoyment of my apartment for 2 to 3 hours at a time during the

day and at night to intimidate and force me out of my home because I am black and from Haiti,

starting on October 5, 2015, through presently.

5.2.5   Defendants knew or should have known of the noise disturbances that are emanating

from their apartments because December 19, 2015, Mark Marolf, Property Manager, informed

the owners and tenants of my noise complaints and I have sent numerous racial harassment

complaint to the Association.

5.2.6   The neighbors' conducts of excessive noise disturbances; stalking; threats of bodily

harm; vandalizing my door knob; attempting to break into my apartment at 2 a.m.; assault and

battery; blocking my path; threats of bodily harm; threats of incarceration; lunging at the corner

at me and flicking their heads, thereby terrorizing me to the utmost degree are all unwelcome

harassments.

5.2.7   Defendants continued to harass me and failed to take any action to minimize or abate the excessive noise disturbances emanating from their apartments since October 2015 through presently.

5.2.8   By their acts described above, Defendants tortuously interfered with my peaceful and lawful enjoyment of my apartment.

5.2.9   On account of Defendants' conducts, I was deprived of the use of my apartment and bedroom and much needed sleep and rest.

5.2.10  On account of Defendant's conduct, I suffered severe emotional distress, chest pains, difficulty breathing, nausea, vomiting, nose bleed, severe headache and exhaustion.

## COUNT 3: VIOLATION OF CIVIL RIGHT ACT § 1981

### (Against All Defendants)

5.3.1   I reallege and incorporate by reference the remainder of the allegations in this Complaint.

5.3.2   Defendants violated 42 U.S.C. § 1981, et seq, and U.S. Virgin Island Law Against Discrimination, V.I. Code Ann.tit. 10, § 64 based on race and national origin.

5.3.3   I am a Haitian born, black, naturalized citizen of the United States of America.

5.3.4   Defendants acted with discriminatory intent when they conspired, planned and agreed to send letters to my landlord on May 26, 2016 and June 8, 2016, that characterized me as a criminal and falsely accused me of criminal conducts that never occurred to coerce, intimidate and pressure my landlord to evict me to prevent me from filing a lawsuit against the Association

and Moe's Fresh Market and  because the Association, owners and tenants does not want a black man from Haiti living next to their apartments.

5.3.5   Defendants acted with discriminatory intent when one of the neighbors stated, "there is a new administration" (i.e. Donald Trump) on November 9, 2016, so they can now harass me. Another stated that "you better walk away from here." and that "this black guy is a bum... he wears the same clothes every day."

5.3.6   Defendants interfered with my lease agreement in the following ways: coercing and threatening my landlord so he can evict me to obstruct justice because I am black and from Haiti; refusing to enforce By-laws, rules and regulations against my white neighbors; and acted aggressively when my white neighbors complained about purported noise emanating from my apartment, after they rigged their screen door-closer to cause blurring noise disturbances.

5.3.7   Defendants interfered with my lease agreement when they made excessive noise disturbances; harassed; stalked; made threats of incarceration; made threats of bodily harm; threats of incarceration; vandalized my door knob; attempted to break into my apartment at 2 a.m.; committed assault and battery; blocked my path; lunged at me and flicking their heads, thereby terrorizing me to the utmost degree. All of which are unwelcomed harassment.

5.3.8   Defendants engaged in intentional discrimination based on Plaintiff's race and national origin and caused Plaintiff to suffer deprivation of his right to make and enforce contracts.

5.3.9   Defendants' action violated 42 U.S.C. § 1981.

5.3.10  As a Direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliations, anxiety, worry, shame, despair,

embarrassment, depression, mental pain, mental anguish, injury to his reputation, and economic

losses, all to Plaintiff's damage in an amount to be proven at trial.

## COUNT 4: VIOLATION OF CIVIL RIGHT ACT § 1982

### (Against All Defendants)

5.4.1   I reallege and incorporate by reference the remainder of the allegations in this Complaint.

5.4.2   Defendants violated 42 U.S.C. § 1982, et seq, and U.S. Virgin Island Law Against

Discrimination, V.I. Code Ann.tit. 10, § 64 based on race and national origin.

5.4.3   I am a Haitian born, black, naturalized citizen of the United States of America.

5.4.4   Defendants violated Section 1982 in the following ways: (1) failing to enforce provisions

of its bylaws, rules and regulations and resolutions against my white neighbors, specifically,

Joanne Levesque, Matthew Swope, Jonathon Morgan, Bernard Vansluytman, Nora Ibrahim,

Madlon Jenkins-Rudziak, Lourdes Cordero and Thomas Cordero and Claudia Woldow;  (2) by

failing to act on my complaints of racial harassment in the same manner in which they acted on

complaint and rules violations not showing involving racial harassment. Specifically, the

Association acted zealously and aggressively when the neighbors complained in October 2015,

about purported noise emanating from my apartment. They sent Mark Marolf, security guard and

the police to my apartment twice; and (3) by tolerating and facilitating the harassment. Further,

the Association has done nothing about the excessive noise disturbances emanating from Joanne

Levesque's, Bernard Vansluytman's, Madlon Jenkins-Rudziak's, Lourdes and Thomas

Cordero's apartments, even though I sent management excessive noise and racial harassment

complaints every day.

5.4.5   Defendants' tolerance of the neighbors' racial harassment is evidence of Defendants' discriminatory intent. Such toleration therefore interfered with my right to enforce and enjoy my lease agreement because I am black and from Haiti.

5.4.6   Defendants engaged in intentional discrimination based on Plaintiff's race and national origin and caused Plaintiff to suffer deprivation of his right to make and enforce contracts.

5.4.7   Defendants' action violated 42 U.S.C. § 1982.

5.4.8   As a Direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliations, anxiety, worry, shame, despair, embarrassment, depression, mental pain, mental anguish, injury to his reputation, and economic losses, all to Plaintiff's damage in an amount to be proven at trial.

## COUNT 5: VIOLATION OF CIVIL RIGHT ACT § 2000a

### (Against All Defendants)

5.5.1   I reallege and incorporate by reference the remainder of the allegations in this Complaint.

5.5.2   Defendants violated Civil Right Act of 1964, 42 U.S.C. § 2000a.

5.5.3   As a Direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliations, anxiety, worry, shame, despair, embarrassment, depression, mental pain, mental anguish, injury to his reputation, and economic losses, all to Plaintiff's damage in an amount to be proven at trial.

## COUNT 6: 42 U.S.C. § 1985, FOURTEETH AMENDMENT,

## DENIAL OF EQUAL PROTECTION

### (Against All Defendants)

5.6.1   I reallege and incorporate by reference the remainder of the allegations in this Complaint.

5.6.2   Defendants conspired and engaged in intentional discrimination against me based on race and/or national origin and caused me to be deprived of my right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

5.6.3   Defendants and their employees were acting under color of law when they deprived Plaintiff of his rights, privilege and immunities secured under the United States Constitution.

5.6.4   Defendants 's offensive and discriminatory actions by the Association, owners, tenants and the Association's employees of harassing and making excessive noise disturbances to obstruct justice and drive Plaintiff out of his home because of his race and national origin under the threat and/or apparent or implied threat of criminal action against the Plaintiff in the event that Plaintiff refused to leave his home or cooperate with the Association, owners, tenants and the Association s 'employees amounted to conduct attributable to the state.

5.6.5   As a result, Defendants caused Plaintiff to be stripped of his right to equal protection guaranteed under the Fourteenth Amendment by discriminating against him on the basis of his race and national origin contrary to and in violation of 42 U.S.C. § 1985.

5.6.6   Plaintiff has been treated differently than other tenants by the defendants on account of the Plaintiff's race and national origin.

5.6.7   There is no compelling interest warranting such disparate treatment, nor is such treatment narrowly tailored to serve any compelling interest.

5.6.8   As a Direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliations, anxiety, worry, shame, despair, embarrassment, depression, mental pain, exhaustion, nausea, vomiting, headache, mental anguish, injury to his reputation, and economic losses, all to Plaintiff's damage in an amount to be proven at trial.

## COUNT 7:  UNLAWFUL ENTRY, TRESSPASS, INVASION OF PRIVACY,

## UNLAWFUL SEARCH AND SEIZURE, AND CONVERSION,

### (Against All Defendants)

5.7.1   I reallege and incorporate by reference the remainder of the allegations in this complaint.

5.7.2   I live at 6700 Sapphire Village, St. Vincent Building, St. Thomas 00802. The rental lease agreement started on October 1, 2015 and to presently.

5.7.3   The Association entered my apartment twice without my consent, April 18, 2017, when I was not home and October 7, 2017, after hurricane Irma and Maria under false pretense to search and seize my property in violation of the Fourth Amendment.

5.7.4   The Association entered my apartment twice without a warrant, authority, consent, probable cause, justification or exigencies in violation of the Fourth Amendment and they deliberately and purposely entered my bedroom, opened my suitcases and stole flash drives with video recordings and pictures, and removed documents including video recordings and pictures.

They deliberately and purposely damaged my HP color printer and Xerox printer to prevent me from printing legal document and to obstruct justice.

5.7.5    The Association's unlawful invasion of my home was unreasonable, in violation of my right to privacy, to be secure in my persons, houses, papers, and effect against unreasonable searches and seizures.

5.7.6    The Association's act and omission described above are highly offensive to an ordinary, reasonable person.

5.7.7    Defendants' acts and conducts were solely motivated by their intent to discriminate against Plaintiff based on Plaintiff's race and national origin.

5.7.8    Defendants and their employees were acting under color of law when they deprived Plaintiff of his rights to privacy, to be secure in his persons, houses, papers, and effect against unreasonable searches and seizures under the United States Constitution.

5.7.9    As a Direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliations, anxiety, worry, shame, despair, embarrassment, depression, mental pain, exhaustion, nausea, vomiting, headache, mental anguish, injury to his reputation, and economic losses, all to Plaintiff's damage in an amount to be proven at trial.

## COUNT 8: VIOLATIONS OF VIRGIN ISLANDS. PRIVATE NUISANCE LAWS

### (Against All Defendants)

5.8.1    I reallege and incorporate by reference the remainder of the allegations in this complaint.

5.8.2   I live at 6700 Sapphire Village, St. Vincent Building, St. Thomas 00802. The rental lease agreement started on October 1, 2015 and to presently.

5.8.3   Defendants are in sole possession and controlled of their apartments.

5.8.4   Defendant have been making and continued to make excessive noise disturbances that are interfering with the enjoyment of my apartment for 2 to 3 hours at a time to intimidate and force me out of my home because of my race and national origin.

5.8.5   Defendants knew or should have known about my noise complaints because I sent numerous complaints to Sapphire Village Condominium Owners Association. In my complaints, I requested that the Association informed the owners and tenants about my excessive noise complaints.

5.8.6   Defendants had numerous opportunity to correct the nuisance that they are causing but failed to take any actions to minimize or abate the nuisance.

5.8.7   By their acts described above, Defendants tortuously interfered with my peaceful and lawful enjoyment of my apartment.

5.8.8   On account of Defendants' conducts, I was deprived and continued to be deprived of the use of my apartment, bedroom and much needed sleep and rest.

5.8.9   On account of Defendants' conduct, I suffered with severe emotional distress, mental anguish, worries, anxieties, headache, exhaustion, nausea and vomiting.

## COUNT 9: NEGLIGENCE/GROSS NEGLIGENCE

### (Against All Defendants)

5.9.1   I reallege and incorporate by reference the remainder of the allegations in this Complaint.

5.9.2   Defendants had a duty not to harass, make excessive noise disturbances and create a hostile environment for me at Sapphire Village Development and to conduct themselves professionally.

5.9.3   Defendants breached their duty when they wantonly, maliciously and recklessly made excessive noise disturbances; harassed; created a hostile environment for me inside and outside Sapphire Village Development; hollowed racial slurs and epithets at me; committed assault and battery; made threats of incarceration in a mental hospital and made threat of grave bodily harm.

5.9.4   Defendants breached their duty when they failed to provide notice for any of the constructions in the St. Vincent building that completely impaired my apartment.

5.9.5   Defendants breached their duty when they wantonly, maliciously and recklessly sent letters to owners, tenants, Emad O'Baidi my landlord that falsely characterized me as a violent criminal to threaten, intimidate me and my landlord to obstruct justice and to coerce the landlord to evict me out of my home because of my race and national origin.

5.9.6   It was reasonably foreseeable that Defendants' breach of their duty to the Plaintiff would cause injury to the Plaintiff.

5.9.7   As a Direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliations, anxiety, worry, shame, despair,

embarrassment, depression, mental pain, mental anguish, injury to his reputation, and economic

losses, all to Plaintiff's damage in an amount to be proven at trial.

## COUNT 10: CIVIL/CRIMINAL CONSPIRACY

### (Against All Defendants)

5.10.1  All individual Defendants, through and among themselves, have conspired with each

other, and in concert, to violate the FHA and to deprive me of protected right and interest

without authority and to deprive me full enjoyment of the goods, services, facilities, privilege,

advantages, accommodations and/or opportunities of Sapphire Village.

5.10.2  Defendants' acts and omissions as stated above are overt acts in furtherance of their

conspiracy and taken together constitute a civil and criminal conspiracy harm to me and to deny

me my civil right under the FHA.

5.10.3  On account of Defendants' conduct, I suffered emotional distress, severe headache,

exhaustion, nausea and vomiting.

5.10.4  As a Direct, foreseeable, and proximate result of said wrongful acts by Defendants,

Plaintiff suffered and will continue to suffer humiliations, anxiety, worry, shame, despair,

embarrassment, depression, mental pain, mental anguish, injury to his reputation, and economic

losses, all to Plaintiff's damage in an amount to be proven at trial.

## COUNT 11: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

5.11.1  I reallege and incorporate by reference the remainder of the allegations in this Complaint.

5.11.2   Defendants acted intentionally and/or recklessly when they purposely and deliberately made excessive noise disturbances; harassed; created a hostile environment for me inside and outside the Sapphire Village Development; hollowed racial slurs and epithets at me; committed assault and battery; made threats of incarceration and made threat of grave bodily harm.

5.11.3   Defendants acted intentionally and recklessly when the sent letters to owners, tenants, Emad O'Baidi my landlord that falsely characterized me as a violent criminal to threaten, intimidate me and my landlord to obstruct justice and to coerce the landlord to evict me out of my home because I am black and from Haiti.

5.11.4   Defendants' actions were extreme and outrageous.

5.11.5   Defendants' extreme and outrageous conducts caused Plaintiff to suffer severe emotional distress, humiliation, embarrassment, worry, nausea and anxiety.

5.11.6   As a Direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliations, anxiety, worry, shame, despair, embarrassment, depression, mental pain, mental anguish, injury to his reputation, and economic losses, all to Plaintiff's damage in an amount to be proven at trial.

## VI.    REQUEST FOR RELIEF

**WHEREFORE**, I respectfully request that this Honorable Court:

6.1.1   For a declaration that among other things, Defendants' actions described above constituted discrimination on the basis of race and national origin in violations of the Fair Housing Act of 1968, as amended in 1988, 42 U.S.C § 3601, et seq, U.S Virgin Island Law

Against Discrimination, V.I. Code Ann. tit. 10, §64 and 42 U.S.C. §§ 1981 and 1982, 42 U.S.C. § 1985, 42 U.S.C. § 2000a.

6.1.2   Enter a preliminary and permanent injunction directing Defendants to take all affirmative steps necessary to remedy their effects of the unlawful, discriminatory conduct described herein and to prevent similar occurrences in the future pursuant to the Fair Housing Act of 1968, as amended in 1988, 42 U.S.C § 3601, et seq, U.S Virgin Island Law Against Discrimination, V.I. Code Ann. tit. 10, §64 and 42 U.S.C. §§ 1981 and 1982, 42 U.S.C. § 1985, 42 U.S.C. § 2000a.

6.1.3   Award Plaintiff compensatory damages in an amount to be determined at trial to compensate Plaintiff for being deprived of his right to peaceful enjoyment of his home regardless of his race and/or national origin, including damages for fear, mental pain, inconvenience, humiliation, embarrassment, emotional distress, and financial injury, as provided pursuant to the Fair Housing Act of 1968, as amended in 1988, 42 U.S.C § 3601, et seq, U.S Virgin Island Law Against Discrimination, V.I. Code Ann. tit. 10, §64 and 42 U.S.C. §§ 1981 and 1982, 42 U.S.C. § 1985, 42 U.S.C. § 2000a.

6.1.4   Award Plaintiff punitive or exemplary damages against Defendants under the provisions of 42 U.S.C. § 3613 (c)(1), the Fair Housing Act of 1968, as amended in 1988, 42 U.S.C § 3601, et seq, U.S Virgin Island Law Against Discrimination, V.I. Code Ann. tit. 10, §64 and 42 U.S.C. §§ 1981 and 1982, 42 U.S.C. § 1985, 42 U.S.C. § 2000a. and otherwise as allowed by law;

6.1.5   Award Plaintiff prejudgment interest;

6.1.6   Award Plaintiff reasonable attorney's fees and the costs incurred in this action;

6.1.7    Award Plaintiff compensatory and punitive damages against Defendants under the

common law tort claims of intentional infliction of emotional distress, private nuisance,

negligence, conspiracy.

6.1.8    For the right to amend this Complaint to conform to proof offered at trial;

6.1.9    For this case to be tried by a jury; and

6.1.10  For such other and further relief as the court deems just and proper.

Dated: May 23, 2018

Wilnick Dorval

Wilnick Dorval
6700 Sapphire Village
Apt 265
St. Thomas, 00802
Phone: (917) 602-3354
Dorval.wilnick@gmail.com